**BERRY LAW PLLC**
745 Fifth Avenue, 5th Floor
New York, New York 10151
Phone: (212) 355-0777
Eric W. Berry
berrylawpllc@gmail.com

**TARTER KRINSKY & DROGIN LLP**
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Michael Z. Brownstein, Esq.
mbrownstein@tarterkrinsky.com

*Attorneys for Shalom Maidenbaum,
 a Creditor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION

-------------------------------------------------------X

*In re* CHOSHEN ISRAEL LLC,

              Debtor,

-------------------------------------------------------X

Chapter 11

Case No. 23-35636 (CGM)

## MAIDENBAUM'S MOTION PURSUANT TO 11 U.S.C. 1112(b) TO DISMISS THIS CASE WITH PREJUDICE

**PLEASE TAKE NOTICE**, that Shalom S. Maidenbaum, a creditor and party in interest, will move before the Honorable Cecelia G. Morris, at the United States Bankruptcy Court for the Southern District of New York, Poughkeepsie Division, 355 Main Street, Poughkeepsie, New York 12601, via Zoom for Government on **September 26, 2023** at 9:00 a.m. (the "Hearing") for an order pursuant to the entry of an order pursuant to 11 U.S.C. §1112(b)(1), §1112(b)(4)(A) and §1112(b)(4)(M) and the Court's inherent and equitable powers, dismissing

this case for cause and with prejudice to the debtor, Choshen Israel, LLC ("Choshen") filing a subsequent case under any provision of Title 11 (Bankruptcy) of the United States Code.

**PLEASE TAKE FURTHER NOTICE** that responses to the Motion, if any, shall: (i) be in writing; (ii) conform to the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court; (iii) be filed and delivered in accordance with the Court's Rules and Judge Morris' Chambers Rules, and be served (a) on the undersigned counsel for Maidenbaum, (b) any parties that have appeared in the case and (c) the Office of the United States Trustee, Southern District of New York, Poughkeepsie Division on or before seven (7) days prior to the hearing date.

**PLEASE TAKE FURTHER NOTICE** that a written response is required only in the event you oppose the Motion. If there are no written responses to the Motion on or before the response deadline, the Bankruptcy Court may grant the relief Maidenbaum has requested without a hearing and without further notice.

**PLEASE TAKE FURTHER NOTICE** that the Hearing before Bankruptcy Judge Morris will be held via Zoom for Government. Participants must register their appearance using the Bankruptcy Court's eCourt Appearance tool at least 48 hours before the hearing. The eCourt Appearance tool is accessible on the Bankruptcy Court's website at https://www.nysb.uscourts.gov/content/chief-judge-cecelia-g-morris, and clicking on the "eCourtAppearances" tab. The Court will circulate the Zoom information via email prior to the hearing. Participants who fail to register timely must appear in person at 355 Main Street, Poughkeepsie, New York.

Dated: New York, New York   Berry Law PLLC
August 31, 2023

By:  /s/Eric W. Berry
     Eric W. Berry
745 Fifth Avenue, 5th Floor
New York, New York 10151
(212) 355-0777
berrylawpllc@gmail.com


Tarter Krinsky & Drogin, LLP
By:   /s/Michael Z. Brownstein
      Michael Z. Brownstein
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
mbrownstein@tarterkrinsky.com
*Attorneys for Shalom Maidenbaum,*
*a Creditor*

**TARTER KRINSKY & DROGIN LLP**
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Michael Z. Brownstein, Esq.
mbrownstein@tarterkrinsky.com

**BERRY LAW PLLC**
745 Fifth Avenue, 5th Floor
New York, New York 10151
Phone: (212) 355-0777
Eric W. Berry
berrylawpllc@gmail.com

*Attorneys for Shalom Maidenbaum,*
  *a Creditor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION

------------------------------------------------------X
                                                                            Chapter 11

*In re* CHOSHEN ISRAEL LLC,
                                                                            Case No.23-35636  (CGM)

               Debtor,
------------------------------------------------------X

**MAIDENBAUM'S  MOTION PURSUANT TO 11 U.S.C. 1112(b)**
**TO DISMISS THIS CASE WITH PREJUDICE**

Shalom S. Maidenbaum ("Maidenbaum"), a creditor and party in interest within the meaning of 11 U.S.C. §1112(b)(1), hereby moves this Court for the entry of an order pursuant to 11 U.S.C. §1112(b)(1), §1112(b)(4)(A) and §1112(b)(4)(M) and the Court's inherent and equitable powers, dismissing this case for cause and with prejudice to the debtor, Choshen Israel, LLC ("Choshen") filing a subsequent case under any provision of Title 11 (Bankruptcy) of the United States Code.  (Underscoring indicates an active hyperlink.)

**PRELIMINARY STATEMENT**

1. This motion demonstrates that the case should be dismissed with prejudice under 11 U.S.C. §1112(b)(1), §1112(b)(4)(A), §1112(b)(4)(M) and the Court's inherent and equitable powers, on the following grounds:

(a) There is no reasonable possibility that Choshen can successfully reorganize; and

(b) The case was filed in bad faith and was motivated solely to delay a state court post-judgment deposition of, document production by, and contempt proceeding against, Aaron Fischman ("Fischman").

2. Fischman is a principal or former principal of Choshen, and Choshen's co-debtor under two judgments held by Maidenbaum. Maidenbaum's judgments were entered in *Maidenbaum v. Cardis Enterprises International, B.V.*, *et al.*, Sup. Ct., Nassau Co. Index No. 604610/2016 (**Exhibit1**) and *Maidenbaum v. Cardis Enterprises International, B.V.*, *et al.*, Sup. Ct., Nassau Co. Index No. 604766/2016 (**Exhibit 2**). Under the judgments, Choshen and Fischman—along with three joint obligors—are liable to Maidenbaum in the total amount of $4,826.981.76, inclusive of post-judgment interest. The three other judgment debtors are Cardis Enterprises International B.V., Cardis Enterprises International N.V. and Cardis Enterprises International (USA) Inc. (collectively, "Cardis entities" or "Cardis"). At least until recently, Fischman has been a legal representative and control person of Choshen and the Cardis entities.

3. As shown below, Choshen was used by Katz, Fischman and others to defraud investors in the Cardis entities.[1] Both Choshen's Local Rule 1007-2 affidavit (ECF 2), which was

---

[1] As further shown below, that scheme has resulted in Fischman's guilty plea to criminal securities fraud charges, and an active civil suit by the New York Attorney General against Katz, Choshen and several other defendants.

provided by an attorney named Lawrence Katz, and its Summary of Assets and Liabilities (ECF 15) are materially incorrect and incomplete. The Summary lists liabilities in the amount of only $2,682,400.00 (*id.*, at Pg 2 of 18, Part 2, Item 4) even though Choshen's judgment debt to Maidenbaum *alone* is $4,826.981.76. The Rule 1007-2 affidavit states that Choshen's liabilities consist of debts listed in "Schedule E." ECF 2, ¶39. However, no "Schedule E" or itemization of the debts appears anywhere on the docket. (Underscored citations indicates a hyperlink.)

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. Venue of this proceeding is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

5. . The statutory predicates for the relief requested herein under 11 U.S.C. §1112(b)(1), §1112(b)(4)(M).

6. 11 U.S.C. §1112(b)(1) provides:

> . . . [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause* unless the court determines that the appointment of a [Chapter 11 trustee or examiner] is in the best interests of creditors and the estate.

(Emphasis added.)

§1112(b)(4) provides that "For purposes of this subsection, the term 'cause' includes:

> (A) . . .the absence of a reasonable likelihood of rehabilitation; [and]
>
> * * *
> (M) inability to effectuate substantial consummation of a confirmed plan.

## SUMMARY OF RELEVANT FACTS

A. <u>**Procedural Background**</u>

7. This is one of three serial bad faith bankruptcy cases within the past five months. Each was intended solely to stay state court contempt proceedings triggered by Fischman's defiance of discovery orders in Maidenbaum's post-judgment collection case. In particular, on April 25, 2023, Nassau County Supreme Court Justice R. Bruce Cozzens filed an order (**Exhibit 3**) which held that, unless Fischman appeared in Court for the deposition and document production required under Maidenbaum's subpoena, Fischman would be arrested and incarcerated. As the order recounts:

> It has been almost seven years since the Judgment (based upon a Confession of Judgment) was entered in this action. There has been constant avoidance of providing financial documents and failure to comply with Court Orders. Though claiming not to have funds $1,000,000 was paid to another Creditor.

*Id.*, p. 2. Justice Cozzens' order continues:

> The underlying subpoena was served in June of 2017 almost six (6) years ago and in spite of the orders of Justice Murphy and the undersigned there has been no compliance whatsoever. There have been ten motions relating to the 2017 subpoenas including six by the Plaintiff for Contempt of Court and 4 by the Defendant seeking to quash and/or for a protective order. The conduct on the part of the Defendants is making a mockery of this Court.

*Id.*, p. 3. The order further held that Fischman could purge the contempt and avoid arrest and incarceration by complying with the subpoena and appearing in Court on May 9 for his deposition. *Id.,* p. 4.

8. The first of these serial bad faith cases, *In re Aaron D. Fischman*, Case No. 23-35368-cgm (Bankr., S.D.N.Y.), was an apparently collusive involuntary Chapter 11 case.

4

That case was filed on May 8, 2023, the day before Fischman's court-ordered and in-court deposition and document production. The case was dismised by a decision of this Court on July 11, 2023, after the purported *pro se* petitioner—ostensibly, an individual named Ahron *Berlin* (*sic*)—failed to serve the summons or appear at the Government Zoom hearing on the Court's motion to dismiss. *Id.*, [ECF 18](#). Prior to its dismissal of the involuntary case, Linda Tirelli (Choshen's lawyer in this case) appeared for *Fischman* in the involuntary case. *Id.*, [ECF 4](#).

9. Following dismissal of that "involuntary" case, Fischman's in-court deposition and document production was rescheduled by Justice Cozzens for August 14, 2023. **Exhibit 4**.

10. Choshen, also represented by Tirelli, then filed this case.

11. Justice Cozzens then severed Maidenbaum's judgment enforcement claim against Fischman from the claims against Choshen and Cardis. (**Exhibit 5.**) The severance was granted at the request of Maidenbaum, who wanted to preempt Fischman's incorrect, but inevitable, arguments that the contempt proceeding was automatically stayed by Choshen's filing of this case.[2]

---

[2] If the plaintiff collects from a debtor's co-obligor, that *benefits* the bankruptcy estate (by reducing its liability to the plaintiff). Therefore, the automatic stay does not extend to the plaintiff's claim against a party, like Fischman, with whom the debtor (here Choshen) is jointly liable to the plaintiff. [*Zavala v. Trece Corp.*](#), 2019 WL 8405574, *1 (S.D.N.Y. Apr. 23, 2019) ("However, where the non-debtor defendant is independently liable to a plaintiff for misconduct—*e.g.*, where the debtor and non-debtors are joint tortfeasors—courts are loath to extend the stay to non-debtors."); [*Variable–Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*](#) , 945 F.Supp. 603, 608 (S.D.N.Y.1996) ("Where, as here, 'the non-debtor's liability rests upon his own breach of duty, a stay clearly cannot be extended to the non-debtor.'" (noting that where the debtor and non-debtors are joint tortfeasors, § 362(a)(1) does not bar claims where "the non-debtor's liability rests upon his own breach of duty"). For these reasons, Choshen's motion to hold Maidenbaum and his attorneys in contempt of the automatic stay ([ECF 12](#), which has a hearing date of October 17, 2023), is meritless.

12. However, on August 10, 2023, Fischman filed a *pro se* Chapter 13 petition, *In re Aaron Fischman*, 23-35660-cgm, ECF 1 (the "Fischman Chapter 13"), automatically staying the contempt proceeding and his deposition and document production.

### C. The Companion Motion to Dismiss
   Aaron Fischman's Chapter 13 Case

13. Simultaneously with this motion, Maidenbaum is moving to dismiss the Fischman Chapter 13 on the grounds that (a) Fischman's adjudicated obligations far exceed the $2,750,000 limit imposed under 11 U.S.C. §109(e) for Chapter 13 debtors and (b) Fischman does not have regular income, as also required under that section, does not qualify as a debtor in a Chapter 13 case, and had not filed the case in good faith.

### D. Maidenbaum's Loans to Cardis, His Equity Investments
   in Cardis, and Judgment Based on the Loans

14. Choshen's Summary of Assets and Liabilities refers to Maidenbaum's judgments against Choshen, Fischman and Cardis as "pending" ECF 15, Pg 11 of 18, at ¶7.2 and ¶7.3. Katz's Rule 1007-2 affidavit states that Maidenbaum's judgments are being "challenged" in a declaratory judgment action, *Aaron Fischman and Choshen Israel Group, LLC v Jonathan A. Stein, and Shalom Maidenbaum*, Sup. Ct., Nassau Co. Index No. 608120/2022. (ECF 2, Pg 6 of 7.) That declaratory judgment action is frivolous, and will inevitably be dismissed. Maidenbaum's judgments against Choshen, Fischman and Cardis—far from being contingent or unmatured— are based on confessions of judgments executed by Fischman and filed in *2016*, six years before Fischman thought to challenge them. *See* **Exhibits 1** and **Exhibit 2.** Choshen's suggestion that Maidenbaum's judgments may be vacated is, as a matter of law, insufficient to defeat this motion to dismiss. *In re BH S & B Holdings, LLC*, 439 B.R. 342, 350 (Bankr.,

S.D.N.Y. 2010) ("mere hope of prevailing on potential litigation claims is not a sufficient basis to defeat a showing of cause to convert [or dismiss] "); *In re FRGR Managing Member LLC*, 419 B.R. 576, 583 (Bankr., S.D.N.Y.2009) ("[M]ost cases reject the need to evaluate the merits of a debtors litigation claims in deciding whether to dismiss or convert a chapter 11 case.").

15. Maidenbaum's judgments against Choshen, Fischman and Cardis are based on loan repayment obligations evidenced by separate promissory notes in respective amounts of $2,000,000 (**Exhibit 6**) and $275,000 (**Exhibit7**). Fischman executed each note as the legal representative of Choshen and the Cardis entities and individually as guarantor on February 23, 2015. *Id.* Maidenbaum provided ample consideration in exchange for these promissory notes. The consideration for the $2 million note was loans totaling $1,350,000 made years earlier to Cardis (and large outstanding interest payments), and novated in 2015. The consideration for the $275,000 note was new loans to Cardis totaling $275,000. *See* **Exhibits 6 and 7**. As security for the loans, Fischman, individually and on behalf of Choshen and the Cardis entities, executed confessions of judgment in the amount of $2,000,000 and $275,000, together with pre- and post-default interest. **Exhibit 1**, at pp. 2-3; **Exhibit 2**, at pp. 2-3. When the notes were not repaid, Maidenbaum filed the confessions of judgments on June 21 and June 28, 2016, in the respective amounts of $2,576,442.78 and $355,542.98. *Id.*

16. Maidenbaum was a substantial, though overly trusting, source of funds for Cardis. In addition to the loans underlying the judgments, Maidenbaum also made equity investments in Cardis totaling f $2,381,000. The checks for all the funds that Maidenbaum provided to

7

Cardis—both as loans and as equity—are annexed as **Exhibit 8** and a spreadsheet summarizing all the loans and the equity investments is annexed as **Exhibit 9**.[3]

17. Maidenbaum's *equity investment in Cardis*, like those of the many other investors who purchased Cardis stock, will not be recovered. Fischman, Katz and others fleeced dozens of investors who made tens of millions of dollars in capital contributions to Cardis in exchange for unregistered investment securities.

18. Regarding Maidenbaum's judgments based on his *loans to Cardis*, Fischman has stymied Maidenbaum's efforts to investigate Fischman's assets and the financial affairs of Choshen and Cardis, as recounted by Justice Cozzens' April 25, 2023 contempt order. *See* **Exhibit 3** .

E.  **The Attorney General's Criminal and Civil Actions**

19. In 2018, the New York Attorney General filed a civil action against Fischman, Choshen and Katz (among others) arising from fraudulent sales of Cardis securities to investors. *People by Letitia James v. Fischman, et al.*, Index No. 452353/2018. The civil action alleges that Choshen and Katz participated in a scheme that diverted tens of millions of dollars in capital contributions from the disclosed and proper uses and misappropriated those investments to Fischman and Katz. Attorney General's Amended Complaint (**Exhibit 10**), ¶¶15, 22, 29, 30, 87, 89, 90, 96, 97, 105, 107, 127(c)(ii)(1) and 162-164.

---

[3]The checks for Maidenbaum's loans and investments were made out to Katz because Cardis directed all investors to make their payments to Katz, who deposited the money in one of two IOLA accounts. As shown below, the funds were directed to Katz, rather than Cardis, as part of a massive investment fraud scheme.

20. In 2020, the Attorney General indicted Fischman on charges that paralleled those in its civil action. On December 15, 2022, Fischman pled guilty to a criminal violation of General Business Law §352-c(5) (**Exhibit 11**, at 3:18-24), a state securities fraud statute, disgorged $1 million to the Attorney General (*id.*, at 31:21-24) and agreed to disgorge another $1 million within three years (*id.*, at 12:17-23). In his allocution, Fischman specifically admitted to intentionally defrauding Cardis investors. *Id.* at 24:14-26:11.

21. In the attorney general's civil action, on August 3, 2023, Justice Robert Reed denied all motions to dismiss, including one by Katz. (The transcript of the argument and decision is annexed as **Exhibit 12**; the decision begins at p. 23.) The decision states, *inter alia*, that . . . the amended complaint explains how the Katz defendants, through their control of Cardis bank accounts, assisted defendant Fischman in siphoning over $3 million in investor payments through fraudulent payments to Choshen." *Id.* at 70:8-12. The decision further states: ". . . the amended complaint details the Katz defendants' assistance in fraudulent payments to Fischman family members and charities, none of whom had any right to the money[.]" *Id.* at 71:7-10. It continues: "the amended complaint describes how the Katz defendants themselves allegedly misappropriated Cardis' money to fund defendant Katz's own personal expenses and provides for, in detail, tracing [of] the accounts of defendants' alleged theft of Cardis funds[.]" *Id.*, at 71:23-72:2. The decision goes on to detail the Attorney General's allegations tracing how over $200,000 in Cardis investor funds was re misappropriated by Katz. *Id.* at 72:6-73:2.

F. **Choshen Cannot Reorganize**

22. Chosen cannot reorganize.

23. Choshen owes Maidenbaum nearly $5 million, and is being sued by the Attorney General, which alleges it is liable for millions of dollars of losses suffered by investors.

24. Choshen's Summary of Assets and Liabilities, states that it has *zero* assets (ECF 15, at Pg 2 of 18, at Items 1a, 1b and 1c) and no employees (*id.*, Pg 13 of 18, at Item 17). *Sapphire Development, LLC v. McKay*, 549 B.R. 556, 570 (Bankr., D. Conn. 2016) (reorganization impossible where debtor "has not had any employees since 2007" and "conducts no business"); *In re Loco Realty Corp.*, 2009 WL 2883050, *3 & n. 4 (Bankr., S.D.N.Y., June 25, 2009) (finding that debtor had no reasonable possibility of reorganizing where it had "little or no cash flow" and "no employees"); *In re Stamford Color Photo, Inc.*, 105 B.R. 204, 208 (Bankr., D. Conn. 1989) (reorganization impossible where "debtor has no business operations or income, and either one or no employees").

25. Katz's Rule 1007-2 affidavit purports to identify as an asset Choshen's stock in Cardis. ECF 2, ¶32. According to Katz, Choshen "intends to liquidate its shares in Cardis to repay its creditors." *Id.*, ¶34. However, any stock Choshen might hold in Cardis is worthless since Cardis, like Choshen, owes Maidenbaum $5 million and is being sued for millions of dollars by the Attorney General, which alleges that Cardis investors lost $72 million. **Exhibit 12**, at 51:9-10.

26. Katz also asserts that Cardis owns intellectual property that it hopes to monetize. ECF 2, ¶32. Katz is proffering to the Court precisely the same misrepresentation used to swindle scores of investors. Justice Reed didn't buy it. In upholding the Attorney General's claims in the civil action, he stated:

> The Attorney General says no technology was ever developed; Cardis had no contracts or contacts that it represented to have to its investors. And its promises that an IPO was on the horizon were allegedly just another strategy to induce investors to continue pouring money into an enterprise that defendants knew was going nowhere.

**Exhibit 12** at 58:14-10.

27. In 2018, Cardis purported to license its technology to Ultimas, Inc., another company founded by Fischman. *See* the 2018 Source Code Agreement between Cardis and Ultimas, as amended. **Exhibit 13.** However, in a case in which Ultimas is represented by one of Fischman's lawyer (Robert Johnson), it states that Cardis breached the source code agreement and that it has not sued Cardis because it "is aware that Cardis is insolvent and defunct." February 9, 2023 affirmation of Ultimas' CEO, Paul Goodman (**Exhibit 14**), ¶3, ¶5.

28. Katz's Local Rule 1007-2 affidavit also states that Fischman has "pledged to pay . . . 10%" as part of a "dissolution" so long as it occurs within this "bankruptcy case under Chapter 11." ECF 2, ¶32. Where is Fischman going to get that money? He owes Maidenbaum $5 million and has consented to another $1 million judgment in favor of the Attorney General, that remains unpaid. **Exhibit 15**. *In re Loco Realty Corp.*, *supra*, 2009 WL 2883050 at *6 (finding no realistic possibility of reorganization where debtor's ability to make a proposed balloon payment was "speculative at best"). Also, the promise that Fischman would pay creditors "10 percent" as part of a Court supervised "dissolution" reveals that, if this case is not a complete sham, at best it is intended to wind down, rather than rehabilitate Choshen, which further compels dismissal. *In re McDermott*, 78 B.R. 646, 651 (Bankr., N.D.N.Y. 1985) (debtor must show "some feasibility of effectuating a viable reorganization plan" since they "should not

11

continue . . . under the umbrella of the reorganization * * * once rehabilitation becomes unrealistic").

## G. The Court Should Dismiss, Rather than Convert the Case

29. Whether a Chapter 11 case filed by a debtor that can't reorganize should be dismissed or, instead, converted to a Chapter 7 case, is determined according to the following criteria:

> 1. Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal;
>
> 2. Whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
>
> 3. Whether the debtor would simply file a further case upon dismissal;
>
> 4. The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;
>
> 5. Whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;
>
> 6. Whether any remaining issues would be better resolved outside the bankruptcy forum;
>
> 7. Whether the estate consists of a "single asset";
>
> 8. Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;
>
> 9. Whether a plan has been confirmed and whether any property remains in the estate to be administered; and
>
> 10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*In re Jude Thaddeus Partners, I*, 2010 WL 4496836, \*9 (Bankr., S.D.N.Y., Nov. 1, 2010) (quoting *Collier on Bankruptcy*, ¶1112.04[7]; at 1112–39–1112–40).

30. These criteria support dismissal, rather than conversion.

31. There are no assets that a Chapter 7 trustee could reach or distribute (and no concerns about an inequitable distribution). *In re Rubio*, 2011 WL 124458, \*6 (Bankr., E.D.N.Y., Jan. 13, 2011) (court should dismiss, as in best interest of creditors, rather than convert where "Chapter 7 liquidation would likely produce little to no benefit to creditors and the estate"); *In re Jude Thaddeus Partners, I*, *supra* (dismissal rather than conversion where "there may not be any assets for a trustee to administer").

32. The case should also be dismissed, rather than converted, for the additional reason that the issues raised by the Court-ordered deposition of Fischman and the contempt proceeding against him are best resolved before Justice Cozzens in the state court. Likewise, the allegations of misconduct by Katz and Chosen are best resolved before Justice Reed in Attorney General's civil suit. *In re Jude Thaddeus Partners, I, supra*, 2010 WL 4496836, at \*10 (dismissal appropriate because Chapter 7 trustee would lack both "history of involvement" with debtor that creditors in state court litigation had and incentive " to engage counsel").

## H. The Dismissal Should Be With Prejudice Based on a Finding of Bad Faith

33. When a Chapter 11 case is commenced to obtain a stay of state court proceedings rather than because of a legitimate attempt to reorganize, the Court should find that the filing was in bad faith. Here, Tirelli who filed this case ostensibly on behalf of Choshen, was just recently Fischman's attorney in the apparently collusive involuntary case dismissed on July 11.

34. In *Sapphire Development, LLC*, *supra*, a finding of bad faith was made because there was no possibility of reorganizing and the debtor ". . . waited until the lawyers were polishing their opening statements in the State Court Action, which sought a judgment that would have stripped it of its sole asset, before pulling the bankruptcy trigger." *Id.*, at 549 B.R. at 571. *Accord:* *In re Loco Realty Corp.*, 2009 WL 2883050, *3 & n. 4 (Bankr., S.D.N.Y., June 25, 2009) (finding bad faith filing where debtor couldn't reorganize and case was filed "on the eve of the receiver taking possession of the Property"); *In re Stamford Photo*, *supra* (bad faith filing found where there was no possibility of reorganization and "it is apparent that one of the primary purposes of the petition was to flaunt the November 28, 1988 state court order").

35. Since this is one of *three* bad faith serial filings involving Fischman and his attorneys and affiliates and aimed solely at delaying Fischman's court-ordered deposition and document production and the contempt proceeding against him, the dismissal should be with prejudice to Choshen filing any further cases under the provisions of the Bankruptcy Code . *In re Casse*, 198 F.3d 327, 341-342 (2d Cir. 1999) ("serial filings . . . made in bad faith" and intended to delay foreclosure sale warranted "dismissal with prejudice" to the filing of a subsequent Chapter 11 case).

## RESERVATION OF RIGHTS

Maidenbaum hereby reserves the right to make any additional arguments at the hearing this Motion and make additional written submissions in support of the relief requested in the Motion.

## NOTICE OF MOTION

36. In compliance with Bankruptcy Rule 2002(a)(3), Maidenbaum intends to serve a Notice of Hearing and this Motion upon (i) the United States Trustee, S.D.N.Y., Poughkeepsie Division, (ii) the Debtor's counsel, (iii) the Debtor's known creditors based on the filed schedules and filed proofs of claim, and (iv) all parties that have appeared in this action.

**WHEREFORE,** for the foregoing reasons, this case should be dismissed with prejudice be granted, together with such other relief as is just and appropriate.

Dated: New York, New York
   August 31, 2023

Berry Law PLLC

By:  /s/Eric W. Berry
   Eric W. Berry
745 Fifth Avenue, 5th Floor
New York, New York 10151
(212) 355-0777
berrylawpllc@gmail.com


Tarter Krinsky & Drogin LLP

By:  /s/Michael Z. Brownstein
   Michael Z. Brownstein
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
mbrownstein@tarterkrinsky.com

*Attorneys for Shalom Maidenbaum,*
 *a Creditor*