# EXHIBIT 12

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK:  CIVIL TERM:  PART 43
 2   ------------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK BY
 3   LETITIA JAMES ATTORNEY GENERAL OF THE
     STATE OF NEW YORK,
 4
                          Plaintiff,
 5
             – against –                    INDEX #
 6                                          452353/2018
     AARON D. FISCHMAN, STEPHEN BROWN, STEVEN HOFFMAN,
 7   LAWRENCE KATZ, SETH ROSENBLATT, CARDIS ENTERPRISES
     INTERNATIONAL N.V., CARDIS ENTERPRISES INTERNATIONAL
 8   (U.S.A.) INC., CARDIS ENTERPRISES INTERNATIONAL B.V.,
     CHOSHEN ISRAEL LLC, LAW OFFICES OF LAWRENCE KATZ,
 9   ESQ. PLLC, LAW OFFICES OF LAWRENCE KATZ P.C.
     and ZERP LLC
10                          Defendants.

11                       – And –

12   NINA FISCHMAN, RAFAELA FISCHMAN, ALEXANDER
     FISCHMAN, STUART FISCHMAN, ANNE SHIMANOVICH
13   and ETHEL WEISSMAN.

14                          Relief Defendants.
     ------------------------------------------------X
15   Motions Seq. 11, 12, 13, 15

16                   August 3, 2023
                           60 Centre Street
17                         New York, New York 10007

18
     B E F O R E:  THE HONORABLE ROBERT R. REED,
19                           Justice of the Supreme Court

20

21   A P P E A R A N C E S:

22

23               OFFICE OF THE ATTORNEY GENERAL – LETITIA JAMES
                 Attorneys for the Plaintiff
24               28 Liberty Street
                 New York, NY 10005
25               By: LAUREN MCDONOUGH, ESQ.
                     R. VERLE JOHNSON, ESQ.
                          mlp
```

```
 1   A P P E A R A N C E S: (Cont'd)

 2
             CLAYMAN ROSENBERG KIRSHNER & LINDER LLP
 3           Attorneys for Stephen Brown
             305 Madison Avenue, Suite 650
 4           New York, NY 10165
             By: BRIAN LINDER, ESQ.
 5               THOMAS DOLLAR, ESQ.

 6

 7           BIENENFELD LAW
             Attorneys for Defts. Hoffman, Zerp, Rosenblatt
 8           680 Central Avenue, Suite 108
             Cedarhurst, NY 11516
 9           By: SAUL BIENENFELD, ESQ.

10

11
             LAW OFFICE of LAWRENCE KATZ
12           Attorneys for the Defendant
             488 Empire Blvd, Suite 101
13           Brooklyn, NY 11225
             By: LAWRENCE KATZ, ESQ.
14

15

16

17

18

19

20

21

22

23

24
                               MICHELE PANTELOUKAS
25                             Senior Court Reporter


                        mlp
```

Proceedings

| 1 | COURT OFFICER:  All rise.  Part 43 is now in |
| 2 | session.  The Honorable Robert Reed now presiding. |
| 3 | Come to order.  Be seated. |
| 4 | THE COURT:  If I could have appearances, |
| 5 | plaintiff first, please. |
| 6 | MS. MCDONOUGH:  Assistant Attorney General |
| 7 | Lauren McDonough for the Office of the Attorney General, |
| 8 | here with my colleague Assistant Attorney General Verle |
| 9 | Johnson. |
| 10 | MR. LINDER:  Good morning, Your Honor. |
| 11 | Brian Linder, Clayman Rosenberg Kirshner & |
| 12 | Linder for the defendant Stephen Brown.  With me is my |
| 13 | colleague, Thomas Dollar, who will be arguing the motion |
| 14 | on behalf of Mr. Brown. |
| 15 | MR. BIENENFELD:  Good morning Your Honor. |
| 16 | Saul Bienenfeld for defendants Steven Hoffman, |
| 17 | Seth Rosenfeld and Zerp LLC. |
| 18 | MR. KATZ:  Good morning, Your Honor. |
| 19 | I am Lawrence Katz, a defendant herein.  48 |
| 20 | Empire Boulevard suite 101, Brooklyn, New York. |
| 21 | THE COURT:  Let's begin and start with motion |
| 22 | sequence number 11. |
| 23 | MR. DOLLAR:  Your Honor, would you like me to |
| 24 | stand at the lectern. |
| 25 | THE COURT:  Whatever you are comfortable with. |

mlp

Proceedings

1    The lectern has the benefit of having the mic right there,

2    but some people want to be able to look down at their

3    paperwork.  It is your choice, as long as you can project

4    and make sure the court reporter can hear what you say.

5             MR. DOLLAR:  I think I'll stand here, my papers

6    don't spread out at the lectern, Your Honor.

7             Good morning.  Thomas Dollar, Clayman Rosenberg

8    Kirshner and Linder representing defendant Stephen Brown.

9             Plaintiff's amended complaint suffers from the

10   same defects as its original complaint did.  And as such,

11   all four claims against Mr. Brown should be dismissed for

12   failure to state a cause of action, and this time with

13   prejudice.

14            We are in a rerun of where we were just over

15   four years ago when we were before the previous Judge

16   assigned to this case, Justice Sherwood.

17            Justice Sherwood's July 15, 2019 decision and

18   order incorporated by reference the transcript of the oral

19   argument that happened that same day.  Justice Sherwood at

20   that oral argument noted the many faults with plaintiff's

21   original complaint:  That it engaged in group pleading.

22   That it failed to distinguish between the various Cardis

23   entities, lumping them all together as one entity called

24   Cardis.  And not noting that Defendant Brown was never an

25   officer of Cardis N.V. -- as in Nancy Virginia -- which

mlp

Proceedings

1    was the loan entity that issued shares.

2            He noted the lack of specificity:  What was it

3    that Mr. Brown did that was actionable?  What sort of

4    communications or omissions did he do?  And what did he do

5    with them?  Did he offer them?  Did he help offer them?

6    Did he circulate them?

7            These communications were not material.  That

8    is, that they were not the sort of communications that a

9    reasonable investor would use in making an investment

10   decision.  In fact, they were not more than good faith

11   predictions and forward-looking statements.

12           What sort of mental state did Stephen Brown have

13   with respect to the common law fraud claim which was in

14   there and still is in there?  That requires scienter.

15   That requires knowledge that the statement is false and

16   intent to induce reliance.

17           With respect to the Martin Act, the Executive

18   Law and the equitable fraud claims, that requires a

19   failure to have undertaken a reasonable investigation.

20           And finally, with respect to the Common Law

21   claims, it requires that the investors have relied on the

22   representations and undertaken some action.

23           Now, back then four years ago, the plaintiff

24   understood in the briefing of the original motion to

25   dismiss that its complaint was deficient.  It didn't do

mlp

Proceedings

1    these things.  So it attempted to replead in its briefing

2    papers.  And this was something that Justice Sherwood

3    called them out for, that they were repleading this.  They

4    tried to refashion the Martin Law as a strict liability

5    statute.  Despite the fact that only several years

6    earlier, in a 2012 brief before the Court of Appeals in

7    the People versus Greenberg case, they took the position,

8    quoting an old case, *People v Federated Radio*, that what

9    is required is failure to undertake a reasonable

10   investigation.  What they said in their footnote 50 is:

11   "Of course, the absence of the scienter requirement under

12   the Martin Act and Executive Law 63(12), does not mean

13   that a false statement is actionable, regardless of

14   whether the speaker had means to know of its falsity."

15        And then in the main body they said:  "Thus,

16   Greenberg may be held liable because at least he

17   reasonably could and should have known that the

18   transaction he personally negotiated with Jen Ray's (ph.)

19   CEO was a fraud."  See *Federated Radio*, 244 NY at 40 to 41

20   (The Martin Act imposes a duty of "reasonable

21   investigation.")

22        Now, despite having represented that to the

23   Court of Appeals in 2012 before Justice Sherwood, they

24   took the opposite position.  They said that *Federated*

25   *Radio* in fact requires a strict liability for Martin Act

mlp

Proceedings

1    claims.  And they took the position that an officer is

2    not -- for a Martin Act claim, the fact that an officer

3    under Business Corporation Law 715(h) is allowed to rely

4    in good faith on statements given to him by another

5    officer, they took the position before Justice Sherwood

6    that this has no bearing on a Martin Act claim.

7            And Justice Sherwood rejected this.  He said,

8    and I am quoting him:  "Wait a minute, every time that

9    General Electric, I know there is something there --

10           Pardon me.  Page 21 of the transcript.

11           "Every time that an Executive Vice President of

12   General Electric goes out and makes a statement, she has

13   to individually go out and check to make sure that whoever

14   provided her with information was not lying to her?"

15           The Assistant Attorney General at the time

16   Mr. Novak:  "The Martin Act is not concerned with what

17   level investigation has been done, it is remedial statute

18   and it focuses on whether there is a material

19   misstatement."

20           Justice Sherwood:  "Are you trying to tell me if

21   you can allege that the statement is a material

22   misstatement then that executive has to go out for herself

23   and make sure that her colleague didn't lie to her?

24   That's what you are telling me?"

25           Mr. Novak:  "Yes, Judge.  They are on the hook."

mlp

Proceedings

1        Justice Sherwood:  "What is left of the Business

2   Corporation Law?"

3        Mr. Novak:  "The Business Corporation Law does

4   not speak to the Martin Act.  And you know, we found no

5   case concerning" --

6        Justice Sherwood:  "Can she rely on the Business

7   Corporation Law in the provision that allows you to rely

8   on a reasonable representation of your colleagues?"

9        Mr. Novak:  "Our position is, no, they may not."

10       The Court:  "That doesn't help us.  How can

11  American business possibly function under the regime that

12  you are relying on?"

13       So Justice Sherwood clearly rejected these

14  arguments.  He gave them -- he gave the People leave to

15  replead.  But he did so under a narrow parameter.  He

16  cautioned, the last page of the transcript, page 39, he

17  addressed Mr. Novak again and said:  "And to the extent

18  that you are going to be making against him,

19  Mr. Dollar" -- meaning me, meaning Defendant Brown --

20  "make sure, I am not deciding it but I am giving you

21  ahead, with respect to pleadings that you may come back,

22  Mr. Dollar made an important point, I think, saying:

23  Brown, who is an officer of the company but not the

24  company specifically, the company that had interactions

25  with investors.  Now, whether that's true or not, but you

mlp

Proceedings

1    may want to pay attention to that.  All right."

2         So flash forward.  They filed their amended

3    complaint.  Do they correct these numerous errors in the

4    originally complaint?  No.  They don't.  They don't.  What

5    they do is they file an amended complaint that, once

6    again, lumps Cardis in as one entity without

7    distinguishing between the Cardis entity that issued

8    shares and the ones that didn't, without acknowledging

9    that Mr. Brown was never an officer of the Cardis entity

10   that issued shares.

11        Paragraph 14 of the complaint they say that,

12   again, they will refer to the Cardis entities as simply as

13   "Cardis" throughout this complaint.  And then repeatedly

14   with respect to Mr. Brown, referring to him as an officer

15   of Cardis.  Again, without specifying.  Again, even though

16   Justice Sherwood said, if you are going to do this over

17   again, you need to -- you need to be clear about this.

18   Because without this level of specificity you do not state

19   a Martin Act claim.

20        And so really what we have here is what is and

21   what is not different in the amended complaint.  Well,

22   what we now have with respect to Mr. Brown is this

23   itemized list of communications.  What plaintiff is saying

24   is, well, we have corrected all of our defects because now

25   we have itemized the list.  You asked for specificity, an

mlp

Proceedings

1      itemized list is specificity.  But no.  Let's look at what

2      is on the itemized list.  So if we look at paragraph 132

3      of the amended complaint:  As discussed above (*see supra*

4      at paragraph 49) -- which is a paragraph that was in the

5      original complaint -- Defendant Brown prepared fraudulent

6      projections that he distributed or caused to be

7      distributed to others."

8              And then we have sub-bullet points a. through

9      m., each one is a different communication referring to

10     what is called "the same false financial projections"

11     being emailed by Mr. Brown to various unnamed people.  But

12     that's not sufficient to state a Martin Act claim, much

13     less a Common Law fraud claim that requires scienter.

14             What are the false financial projections?  What

15     is false about them?  What are the projections?  What is

16     material about this communication?  You know, you have

17     itemized this list of communications, but there is no meat

18     there.  There is no -- there is nothing to this allegation

19     other than an enumerated list of communications.

20             And then when we -- when the amended complaint

21     does refer to communications themselves, and it does so

22     excerpting them, not including the entire communication

23     and the standard for materiality is the entire

24     communication in context, not the blurb of them.  But

25     looking at what they excerpted, we see a number of forward

mlp

Proceedings

1   looking statements made in good faith reliance on

2   documents provided from Aaron Fischman or other officers

3   or the Chief Operating Officer, Nebo Djurdjevic, not

4   included as a defendant in the complaint.

5           THE COURT:  You say that it is in reliance

6   upon -- in good faith reliance.  Good faith reliance is

7   factual, isn't it?  I mean, if we take -- if we take the

8   complaint at the motion to dismiss stage, accepting their

9   pleaded facts as true and accordingly forward them every

10  favorable inference, your charge, your defense there is

11  that your client acted in good faith reliance.  Well,

12  that's what the case is about.  The meat of discovery is

13  determining whether there is something that demonstrates

14  that your client acted in good faith.  It seems difficult

15  to simply cloak the defendants accused of some level of

16  fraud in an armor of simply saying, well, someone else

17  told me that that was so.  This is -- you know, that's the

18  meat of the thought.  Is there a reason to believe that

19  what the person told you is true?

20          And just to be clear, you mentioned General

21  Electric, well General Electric is wholly different from

22  the parties who are involved here.  There are hundreds of

23  officers of General Electric, certainly.  And so the idea

24  that you have to verify each one of those individually,

25  yes, that would be tough.  But I don't see anything to

mlp

Proceedings

1    suggest that there are hundreds of executives who are

2    involved here.

3              MR. DOLLAR:  I take your point, Your Honor.  If

4    I may address it in a few ways?

5              Plaintiff has to make these factual allegations

6    at the pleading stage.  Here, they don't.  Now, we begin

7    with the Martin Act standard, which is, they must allege

8    facts showing that Mr. Brown failed to undertake a

9    reasonable investigation.  That is the legal standard.

10   That is the legal standard recognized by Justice Sherwood.

11   That was the legal standard recognized by the Attorney

12   General's office itself in 2012 in the Greenberg case,

13   although they changed their position for the sake of this

14   case.  But to satisfy that legal standard, they actually

15   have to make this allegation.  And they simply don't do

16   that.  Then we -- we do have Business Corporation Law

17   715(h) which applies to the General Electric just as it

18   does to a -- to a small company.

19             I'll refer back to language from Federated Radio

20   back in 1920-something and I am quoting.  It says:

21   "Perfectly honorable members of the business in question

22   are safeguarded by substantial provisions in the Act and

23   by the power of the courts, and the law is not aimed at

24   them."  So --

25             THE COURT:  That's true.  That's true.  But I

mlp

Proceedings

1    guess the point I asked you to focus on is that this is a

2    motion to dismiss stage, not a summary judgment stage, not

3    a trial stage.  So ultimately the question is, was there

4    reasonable reliance.  That's a factual inquiry.  It is a

5    factual inquiry.  How, if we accept what they say as true,

6    how does simply trying to cloak your client in the notion

7    that he acted in good faith upon someone else's

8    representation, how is that enough at this point?  It is

9    very easy to simply say, this is, you know, someone told

10   me this.  Well, what if someone told you that today the

11   sky was blue.  When you looked outside and it was

12   torrential downpours and you come in the courtroom and

13   say, well, although I looked out the window and there were

14   gray skies and it was torrential rain, my guy told me it

15   was true.  It is a factual inquiry.  What is reasonable is

16   the inquiry.

17          MR. DOLLAR:  Your Honor, before we get to the

18   factual inquiry, they actually have to make the factual

19   allegation that he didn't.  And they don't do that.  They

20   didn't do that in the original complaint.  And to fill

21   that in in the amended complaint, it is just this rote

22   recitation.

23          Paragraph 141:  "Defendant Brown made these

24   statements" -- referring to everything in the complaint

25   before that -- "recklessly, knowingly or intentionally.

mlp

Proceedings

1    Defendant Brown failed to conduct a reasonable

2    investigation concerning the statements he was relating.

3    Nor was it reasonable to rely on Defendant Fischman or

4    others at Cardis.  There was no basis to believe these

5    individuals were reliable, particularly because they never

6    supplied Defendant Brown with materials that would

7    corroborate Defendant Brown's representations."

8          Now two things about that.  One, that does not

9    meet the specificity for pleading claims that sound in

10   fraud.  That is simply a conclusory rote recitation of not

11   even one mental state, but three different mental states.

12   I don't even know which is which with regard to

13   recklessly, knowingly or intentionally.

14         Second, the last sentence there, particularly

15   because they never supplied Defendant Brown with materials

16   that would corroborate Defendant Brown's representations;

17   that is contradicted by documentary evidence.  That is

18   integral to the complaint.  That is not something that is

19   being brought in from outside that would be as, I agree,

20   Your Honor, that would be appropriate on a summary

21   judgment motion.

22         But here where the complaint excerpts little

23   communications, they have put the entire document

24   containing the communication, is now an integral document,

25   into the complaint.  And it is something that is

mlp

Proceedings

1      appropriate to consider on the motion to dismiss.

2              So for example, we look at what was Exhibit F to

3      my colleague, Mr. Linder's, affirmation which is ECF

4      docket number 166.  This is a letter sent from Mr. Brown

5      dated December 24, 2014.  It is referenced in the amended

6      complaint, I think, a few times.  It is referenced at

7      paragraph 137 -- excuse me.  135(d).

8              And this document includes the information that

9      was provided to him.  It has forward-looking statements

10     about a Cardis partnership with ByStorm.  It includes

11     expectations; statements like, most likely ventures,

12     expected to.  And you have a number of partnerships, each

13     saying expected to, expected to.  And then, as part of it

14     you have an article from Billboard Magazine quoting

15     Mr. Djurdjevic, the COO of Cardis, explaining what Cardis

16     is and what it does.  And then you have, as part of this

17     integrated document, a press release from ByStorm itself

18     saying the company is also set to release Music Mogul, a

19     gaming app for iPhone and Androids, as well as a

20     partnership with Cardis International, an online payment

21     system service through their ByStorm technology venture.

22     That's ECF 166 at page -- I don't know that it has a page

23     number.

24             So you have these documents here that can be

25     considered on a motion to dismiss, where the document

mlp

Proceedings

1    itself contradicts the document that the plaintiff has

2    chosen to include an excerpt of; contradicts the

3    conclusory statement about how he was never provided with

4    materials.  The materials are there.  They are in the

5    documents.  So, you know --

6             THE COURT:  The difference, Counsel, between

7    something contradicting something that's in the complaint

8    and something conclusively establishing that what is

9    stated in the complaint is not true, simply having some

10   level of contradiction in a material document, doesn't say

11   it fully establishes a defense or utterly refutes --

12   utterly refutes, conclusively, what is stated in the

13   complaint.

14             Go ahead, Counsel.

15             MR. DOLLAR:  It is something that they have to

16   allege at this stage.  Not just the conclusory statement

17   that --

18             THE COURT:  But if they allege -- what you are

19   saying is that they need to allege a conclusion, instead

20   of what they have done, which is allege facts.  Now,

21   challenge those facts.  Sure.  But it doesn't really do

22   any good saying that.

23             MR. DOLLAR:  They need to allege specific facts

24   that raise the indicia that --

25             THE COURT:  What would that be?  What would that

mlp

Proceedings

1    be?  Show me a case that lays out the standard that you

2    are talking about in detail that says that, no, they have

3    to do -- show that they alleged these facts and these

4    particular facts are what would show that someone had the

5    necessary state of mind.  What is that?

6            MR. DOLLAR:  I think the case is *Federated Radio*

7    itself.  And plus the earlier decision in this case by

8    Justice Sherwood, which is that they need to allege

9    something.

10           THE COURT:  Specifics.  And then they have come

11   back and they have alleged specifics.  Specific documents

12   that you can challenge.  That you can sit down in

13   discovery.  The whole point of this is not to have them

14   make charges without any factual basis.  If they say these

15   are the documents upon which I am basing my claim that

16   this person acted knowingly and with a, you know, some

17   level of a bad mental state, then you are able to look at

18   those documents in discovery and challenge them point by

19   point.  If you don't put those in, then they are left

20   with -- you are left with the task of saying, well, what

21   do you mean he acted in this -- with this mental state.

22   Here you have basis for defending yourselves.  And that's

23   the goal, is to make sure that the defendants have an

24   ability to defend themselves against the charges that are

25   being made, rather than simply saying, well, how am I

mlp

Proceedings

 1    supposed to -- how am I supposed to respond to your

 2    conclusion that my client acted with scienter.

 3                MR. DOLLAR:  I think that they are required

 4    to --

 5                THE COURT:  I asked for -- when I asked the

 6    question I said show me a case that lays that out.  Do you

 7    have a case that lays that out, that says these factual

 8    allegations establish the requisite pleading level

 9    required for someone's mental state, in a Martin Act case

10    or a fraud case or a case under Executive Law?

11                MR. DOLLAR:  I don't have a specific case giving

12    a roadmap of --

13                THE COURT:  Well that's what is happening here,

14    Counsel.  What you are saying is they have laid out

15    various factual allegations, rather than simply concluding

16    that your client acted with the requisite mental state.

17    And what you want is factual details that demonstrate that

18    he acted with the required mental state.  And I ask,

19    because you are making the motion, you bear the pleading

20    burden or the burden on this motion, to demonstrate that

21    they can't possibly, based on their allegations, they

22    can't possibly in this case demonstrate that someone

23    acted -- that your clients acted with the requisite mental

24    state.  If you have a case that says that and lays out the

25    particular facts that would be required to be shown,

                              mlp

Proceedings

1    rather than simply spelling out their evidence that they

2    believe identifies, which you could challenge.

3            MR. DOLLAR:  I think we go back to *Federated*

4    *Radio* itself.  They have to allege --

5            THE COURT:  Okay.  I got *Federated Radio*.  I

6    have heard you say *Federated Radio*.  All right?  And I

7    read *Federated Radio*.  And I have a whole team of people

8    looking at *Federated Radio*.  So, I am asking, is there

9    some particular language in *Federated Radio* that lays out

10   that factual analysis, that case from 1926, that lays it

11   out?

12           MR. DOLLAR:  I mean it is a short case.  But it

13   is one that lays out what the standard is that the people

14   recognized, at least in 2012, is still the standard.

15   And --

16           THE COURT:  Counsel, it is easy to say what the

17   standard is.  What you are saying is that what they have

18   done in their effort to meet that standard is inadequate

19   because they have laid out specific factual references.

20   And I am asking, show me a case where this was shown or

21   determined to be inadequate, where someone laying out

22   these specific factual references to establish the

23   requisite mental state was said, no, all you did was just

24   lay out evidence.

25           MR. DOLLAR:  Your Honor, there are no facts

mlp

Proceedings

1    alleged in this complaint that show that Mr. Brown failed

2    to conduct a reasonable investigation.  The only -- the

3    only attempt is this paragraph 141 that is just a rote

4    recitation.  They have to allege something.  They have to

5    allege something to create an inference that Mr. Brown did

6    not undertake a reasonable investigation.  And what I am

7    saying is that it is not here.  Yes, they have itemized

8    communications.  But with respect to those communications,

9    they have not alleged --

10          THE COURT:  Counsel, at a trial -- at a trial

11   what would happen?  How would this proceed?  They would go

12   in and they would offer up exhibits, or letters.  No one

13   knows what is in a human being's head.  How can anyone do

14   that other than by saying, well, these are the documents

15   he got.  Everyone, ladies and gentlemen of the jury, look

16   at this and determine whether or not these documents would

17   cause reasonable members of the jury to believe that what

18   the executive -- their fellow executive said, was true.

19   That's how it would be done.  They have given you the

20   roadmap of what they would have to lay out.

21          MR. DOLLAR:  Your Honor, I think that if we went

22   to trial and they put on no evidence whatsoever that

23   Mr. Brown failed to undertake a reasonable investigation,

24   which is what the legal standard is, I think the result

25   would be a directed verdict.  Especially given that we

mlp

Proceedings

1      have a Business Corporation Law 715(h) which says as a

2      matter of law, as a matter of law it is reasonable to rely

3      on.

4                    THE COURT:  In discovery, Counsel, they would

5      present Mr. Brown with these itemized documents.  And they

6      would ask him under oath, what reasonable investigation

7      did you take to determine whether these things -- whether

8      you could rely upon these statements.  And he would say

9      either I did this X, Y, and Z; or he would say, I didn't

10     do anything.  And then that would be the basis for the

11     parties going in and challenging.  Simply sitting on his

12     hands, if someone gives him something that other people

13     might look at and say, that's suspect, that doesn't sound

14     reasonable, that's a fantasy.  And if you start pitching a

15     fantasy to, you know, various members of the public, they

16     might be sold.  That's the whole nature of fraud or, you

17     know, that's the issue.

18                    MR. DOLLAR:  I think, Your Honor, if the answer

19     were, I got these documents from Aaron Fischman, I got

20     these documents from Nebo Djurdjevic, I had no reason to

21     believe that they were misleading me -- and again, there

22     is no factual allegation that Steve Brown had reason to

23     believe that they were misleading him -- that defeats a

24     Martin Act claim.  As a matter of law, that defeats a

25     Martin Act claim.

mlp

Proceedings

1      THE COURT:  That would defeat a Martin Act claim

2   possibly at summary judgment where they would ask the

3   questions, you would have the responses.  And the Court

4   would be presented with the sworn testimony with respect

5   to each of these documents that have been identified in

6   the complaint.  And either it will sound or ring true or

7   it wouldn't.  And if it looked like the Court couldn't

8   figure that out there is a basis for figuring that out as

9   a matter of law, the Court would pass it on to a jury or

10  other fact finder to hear the evidence at a trial and then

11  make that determination.  They wouldn't just -- the

12  problem here is foreclosing inquiry without discovery.

13  That's the problem.

14      MR. DOLLAR:  Your Honor, they have to make the

15  allegation.  They have to make the concrete factual

16  allegation as to --

17      THE COURT:  Counsel, I have heard that.  All you

18  are doing is repeating that.  I asked a question whether

19  you could show me a case where a Court said when someone

20  had laid out documents in a complaint, that that was

21  inadequate.  And all you do is tell me that the short,

22  which you described, 1926, 100 years ago, case of

23  *Federated* that that lays out the standard.  I am asking

24  for an analysis.

25      MR. DOLLAR:  Your Honor, I am not aware of a

mlp

Proceedings

1    case, a Martin Act case.

2        THE COURT:  That's all right.  That's the

3    answer.  That's the answer.  And I don't need to keep

4    having you go back to saying, you know, they haven't met

5    the standard even though they have laid out these facts.

6    Because the standard is that they must do this.  And I

7    asked you if there is a case other than from 1926 where

8    the Court has determined that based upon a pleadings

9    failure to identify something, that they dismiss the case

10    at this early stage.

11        MR. DOLLAR:  I point again to the People's own

12    representation in the Greenberg case before the Court of

13    Appeals, which was 2012, just over a decade ago,

14    understanding that this is the standard.  And I think they

15    recognized in the first motion to dismiss that they did

16    not meet the standard, which is why they tried to

17    reconstitute the standard as one for strict liability.

18        Now the question before us is, have they

19    corrected that in the amended complaint.  And they

20    haven't.  Because again, the only allegation of a failure

21    to -- despite the fact that the communications are

22    itemized, the only allegation of a failure by Mr. Brown to

23    undergo a reasonable investigation is this conclusory

24    statement in 141.  So they heard the standard applied by

25    Justice Sherwood and they came back and said, well instead

Proceedings

1    of following these strictures, these cautions that you

2    have given us, we are going to put in this conclusory

3    statement, Defendant Brown failed to conduct a reasonable

4    investigation concerning the statements he was relating.

5    And it ended with that.

6         This is a fraud case.  This requires specific

7    facts to be pleaded.  And I understand that now they have

8    broken down the communications in these sort of itemized

9    line items, but again, there is no fact alleging Mr. Brown

10   failed to undertake the reasonable investigation.

11        I would also like to turn to the materiality

12   issue.  That is another element of the Martin Act claim,

13   as well as the Common Law claims.  And that's simply not

14   there either.  Because when we look at these itemized

15   communications broken down, and we have the full

16   communications with respect to some of them, they included

17   them as exhibits, I believe that the People are in

18   possession of these documents in their entirety.  These

19   are forward-looking statements.  These are forward-looking

20   statements.  135(a): "In an August 15, 2013 letter

21   Defendant Brown wrote:  'Cardis expects to be seeing

22   revenues from the vending machine opportunity in its joint

23   venture with Spindle as early as 2014.'"

24        And then we have, you know, we have more of

25   these "forecasts," "expects," "anticipates."  And in some

mlp

Proceedings

1     of these instances -- and materiality is an issue of law.

2     It is not an issue of fact.  We have to look at the

3     statements that they have alleged here and say, are they

4     the sort of statements that a reasonable investor would

5     have used to make an investment decision.  And remember,

6     Steve Brown was not an officer of Cardis N.V., the entity

7     that issued shares.  This is an important distinction.

8     This is a distinction that Justice Sherwood told the

9     People to correct in their amended complaint.  And they

10    did not do so.  That the reasonable investor must have --

11    it must be the sort of statement that would cause a

12    reasonable investor to do something with an investment,

13    buy shares, sell shares, what have you.  And as a matter

14    of law forward-looking statements with bespoke caution

15    language are not material.

16          And so I would ask the Court to look at these

17    statements individually which are in the complaint and

18    look carefully and see what they are and what they are

19    not.  Which is that they are simply not material

20    statements.

21          And then for the common law claims we have to

22    take it one step further.  They must actually have induced

23    reliance.  And again, the allegations of actual reliance

24    are ones more cursory and rote.  You have paragraph 140

25    listing some out.  140(a) is referring to a subordinate of

mlp

Proceedings

1    Defendant Brown making investments.  But that's the same

2    subordinate that is alleged several paragraphs earlier as

3    being a participant in one of these misstatements.

4            You have a -- in 140(b), you have a -- excuse me

5    140 (a), you have a reference to Defendant Brown's

6    representations that Cardis was on the cusp of earning

7    substantial revenue, and realizing an IPO or buyout.  Not

8    in quotation marks.  But then we refer back earlier in the

9    complaint to 136(b) where it does directly quote from him,

10   and there is nothing about "on the cusp."  It says

11   something very different.  The exit -- and this is a

12   direct quote, 136(b):  "On January 22, 2014 Defendant

13   Brown wrote the following:" -- direct quote, 'The exit

14   strategy remains the same - an IPO or merger.  Just

15   becoming a major process in the music and mobile payment

16   industry alone can give us a multiple billion-dollar

17   valuation and is very achievable.  We think we can become

18   a major force in the industry by the end of 2014.'"

19           Nothing about "on the cusp."  It is explaining

20   what the strategy is, what the plan is, not a

21   representation that this is immanently about to happen.

22   Where does the "on the cusp" language come from?  Well we

23   look at paragraph 139(c), that refers to a different

24   communication.  "On October 27, 2014 Defendant Brown

25   e-mailed the same investor stating, quote, 'it is my

mlp

Proceedings

1    responsibility to keep investors updated.'"  And falsely

2    claiming that Cardis was, quote, "on the cusp of signing

3    and implementing several key groundbreaking agreements."

4           Not on the cusp of realizing an IPO.  On the

5    cusp of signing and implementing several key

6    groundbreaking agreements.

7           I think it is important to go through -- I mean,

8    they have done this, sort of, magic trick.  They have

9    said, well, we listed a bunch of communications, voila.

10   We can state a claim.  We have survived the motion to

11   dismiss.  We need to look at them granularly and see, are

12   each of these material -- setting aside the mental state,

13   which, again, is a barrier.  Are the communications

14   themselves material or are they forward-looking?  Do they

15   contain bespokes caution language?  And the answer is they

16   are not material.  And they do contain forward-looking

17   statements.

18          And then again for the Common Law fraud claim,

19   actual scienter has to be alleged.  And it is not.  Actual

20   knowledge of the falsity.  There is no fact in here that

21   other than the rote conclusory statement, nothing to raise

22   the indicia that Mr. Brown knew that any of these

23   statements were false.  Or that he intended anyone to rely

24   on the statements or beyond, again, the rote conclusory

25   self-contradicting bits about reliance, specifically who

mlp

Proceedings

1    relied on them, how did they rely on them.

2            And finally, Your Honor, I just want to briefly

3    address the statute of limitations issue that is in our

4    briefs.  In the time since this case was commenced the

5    legislature enacted CPLR 213(9) which imposes a six-year

6    statute of limitations on Martin Act claims and Executive

7    Law 63(12) claims.

8            Since we filed our briefing papers, the First

9    Department held in *People v Trump* 2023 NY App Div.  Lexus

10   3448, that this statute should be applied retroactively.

11   As far as I am aware, the Court of Appeals has not yet

12   ruled on this.  We believe that this decision was wrong.

13   But we recognize that Your Honor is bound by the First

14   Department's decision on this.  We don't concede the

15   argument.  We want to preserve it in the event we ever go

16   to the Court of Appeals.  But recognize before Your Honor

17   that you are bound by that First Department decision.

18           Aside from that, as noted in our briefs, there

19   are aspects of the complaint that would not even survive

20   the three -- excuse me, the six-year statute of

21   limitations and should be rejected.

22           So in conclusion, Your Honor, for the reasons we

23   have stated in our briefing papers and today on the

24   record, all four claims against Mr. Brown should be

25   dismissed for failure to state a cause of action.  Thank

mlp

Proceedings

1    you.

2              THE COURT:  Thank you.

3              MS. MCDONOUGH:  Thank you, Your Honor.  And good

4    afternoon.  May it please the Court?

5              On December 21, 2018 the Attorney General sued

6    the defendants to stop their fraudulent practices in their

7    dealings with investors that violated the Martin Act and

8    Executive Law 63(12).  The defendant's motion fails for

9    three reasons:

10             First, the Martin Act and Executive Law 63(12)

11   are adequately pled with materiality and falsity.  Those

12   are the only requirements that the law and the case law

13   requires to be pled.

14             Second, the allegations pled in the complaint

15   are pled with particularity because they state which

16   defendant said what, when, to whom, and how it was said.

17   Plus the complaint alleges materiality and falsity.

18             And lastly, as counsel just pointed out, the

19   First Department has recently and decisively held that the

20   six-year statute of limitations is retroactive.

21             Now, Your Honor, before I turn to my arguments,

22   I, with the Court's permission, I wanted to briefly

23   discuss some background and the facts, particularly the

24   specific allegations against the defendant.  It is my

25   belief that that will help streamline and cut to the point

mlp

Proceedings

1    of the arguments.

2          So with that, Your Honor, the Martin Act and 100

3    years of case law beginning with the famous *Federated*

4    *Radio* up to and including, for example, *Credit Suisse* in

5    2018, has said that the Martin Act is a broad remedial

6    statute.  The breadth of the Martin Act is consistent with

7    its purpose, and that purpose is to protect the investors.

8    And in *Federated Radio* the Court pointed out that the Act

9    covers, quote, the acts need not originate from any evil

10   design.  And it is set out to, quote, defeat all

11   unsubstantial and visionary schemes.

12         Now Your Honor, Cardis was a fraud.  And the

13   exact type of visionary scheme that the Court of Appeals

14   contemplated when they decided *Federated Radio*.  Cardis

15   supposedly had some technology that would partner with

16   various third-party merchants and enable those third-party

17   merchants to bundle small-dollar transactions, thereby

18   lowering their costs.  The relationships with those third

19   parties was necessary for Cardis to succeed.

20         So, year after year the defendants, including

21   Defendant Brown, made promises that those deals with those

22   third parties were evident.  However, year after year none

23   of those deals ever came to fruition.  And they never came

24   to fruition and that was even in the face of investors,

25   for years, beginning in at least the summer of 2012,

mlp

Proceedings

1      questioning the defendants, including Defendant Brown,

2      about whether Cardis was a fraud.  Aaron Fischman ran

3      Cardis and ran the scheme.  Fischman is now a -- stands as

4      a convicted felon, two felony counts, for his

5      participation in Cardis.  And he is also dismissed from

6      this case.

7            But in order to carry out this scheme

8      successfully, Fischman needed to work in concert with the

9      defendants.  Now, he had his financial expert, Defendant

10     Stephen Brown; the lawyer, Defendant Lawrence Katz; the

11     salesman, Defendant Steven Hoffman; and his right-hand,

12     Defendant Seth Rosenblatt.

13           Your Honor, first I am going to now, with the

14     Court's permission, talk about all the defendants, but I

15     am going to start with Brown.

16           Brown used various titles:  CFO, Senior

17     Financial Executive, VP of Finance, in conjunction with

18     his favorable reputation in the community for his

19     professional work and his charitable work, to create

20     legitimacy for Cardis; to create the idea of profitability

21     for Cardis; and to entice investors.  One of Brown's jobs

22     was to draft these investor letters.  Now, the investor

23     letters touted immanent deals, not forward-looking deals,

24     immanent deals with various companies.  The statements

25     contained in these letters as detailed in the complaint

mlp

Proceedings

1    amounted to material misrepresentations because the deals

2    were not immanent.  There were also fraudulent practices

3    because -- and I am referring to GBL 352-c(1)(b):  They

4    were representations as to the future which are beyond

5    reasonable expectation or unwarranted by existing

6    circumstance.

7         Your Honor, just to illustrate, I am not going

8    to go through each paragraph in the complaint, but for

9    illustration we allege in paragraphs 56 through 57 and

10   133(c) that in a May 25, 2014 letter, Brown made the

11   material misrepresentations about three different music

12   companies, those were Sony, Warner and Universal, stating

13   that Cardis was going to close on deals within 30 to 60

14   days.  That was an unwarranted promise, misstatement,

15   based on the existing fact.  And the existing fact at that

16   time was that there have not been beyond one preliminary

17   meeting with those companies.

18        Again to illustrate, we allege in paragraphs 53

19   through 55 that -- and 133(d), as in dog, that in a

20   December 25, 2014 letter Brown wrote about a deal that was

21   going to close in the next month or two, January, February

22   of the following year, with RocNation.  That was an

23   unreasonable statement based on the existing fact.  And

24   that existing fact was that at the time Cardis did not

25   have the necessary technology to make the RocNation deal

mlp

Proceedings

1    happen.

2              And again, in paragraphs 69 through 72 and

3    136(g), as in girl, Brown wrote in an e-mail to an

4    investor this time, September 6, 2016, where he talked

5    about two immanent deals, one was with a parking meter

6    company based out of Cedarhurst, Long Island, where Cardis

7    was -- where the offices of Cardis was.  And that was,

8    again, it was going to be an immanent deal.  That was

9    unwarranted based on the existing circumstance that at the

10   time Cedarhurst, the town, had not approved Cardis working

11   with this parking meter company.  And there was a

12   compliance issue.  Cardis needed to pass some type of

13   compliance that allowed credit cards to -- safeguard

14   credit card transactions.  Cardis did not have that

15   necessary compliance.

16             That September 6, 2016 e-mail also included the

17   material misstatement that there was an immanent deal with

18   Cumberland Farms.  That was unwarranted based on the

19   existing circumstance that at the time there had not been

20   a meeting between Cardis and Cumberland Farms.  One single

21   meeting happened several months later.

22             Now, Your Honor, to put these -- these

23   statements in context, and as I stated before, beginning

24   in the summer of 2012 Brown and some of the other

25   defendants were on notice that Cardis was potentially a

mlp

Proceedings

1    fraud.  So in paragraph 139(a) there an investor

2    questioned what had been spent to get Cardis off the

3    ground and questioned whether Cardis was a scheme.

4         Then again in July 2014 Brown was part of the

5    employees that put together a response from an investor.

6    That investor e-mailed the defendants and said, and this

7    is at paragraph 118, 119 and 139(b), you guys have been

8    telling the investors you are very close to a deal for

9    many years now, and they no longer believe you.  And the

10   investor asked if they were involved in a real fraud.

11   Part of Brown's response included that he called the

12   allegations of fraud, quote, "absurd on every level."

13        And Your Honor, with the Court's permission, I

14   wanted to talk about the other defendants now, if that's

15   all right.

16        THE COURT:  Let me hear from them first.

17        MS. MCDONOUGH:  All right.  In that case, Your

18   Honor, I'll now turn to my first claim.

19        The complaint states a claim that Brown violated

20   the Martin Act.  The Martin Act, enacted in 1923,

21   *Federated Radio*, 1926, and 100 years of case law lays out

22   exactly what the Attorney General is required to plead.

23   And that's materiality and falsity.

24        And just a quick point, Courts have routinely

25   held that the elements required for Executive Law 63(12)

mlp

Proceedings

1    are the same, in addition to it being repeated and

2    persistent.

3            And that's what we pled here.  The statements

4    made to investors, as I have discussed briefly and that

5    are laid out in our brief and laid out in our complaint,

6    most importantly, is that they are false.  They were based

7    on unwarranted -- they were unwarranted based on the

8    existing facts at the time, the existing circumstances.

9    And they were material.  As I said, Cardis' success was

10   contingent upon these third-party -- these third-party

11   deals.  The fact that an investor heard that a third-party

12   deals was imminent, within 30 to 60 days, in the next

13   month or two, that bears on materiality.  That bears on a

14   reasonable investor's decision as to whether to invest.

15           Brown attempts to add an additional element that

16   the People are required to plead for a Martin Act claim.

17   That is not what is required by the law.  It is not

18   required by case law.  And it is not what *Federated Radio*

19   said.  *Federated Radio* said that in that case the

20   materials included in their prospectus, included material

21   from an anonymous source.  In that case the promoter was

22   required to do a reasonable investigation.  That doesn't

23   mean that that now created a new element.  And again,

24   there is no case law that requires that up to and

25   including, like you said, *Credit Suisse* in 2018.

                              mlp

Proceedings

1    Materiality and falsity is all that is required.

2            Regardless, Brown participated in the fraud.  He

3    was necessary, he provided comfort to investors.  He was

4    put on notice beginning at least until -- in 2012 from

5    investors themselves that Cardis was a fraud.  There was

6    no reasonable investigation.  If he had done a reasonable

7    investigation, the scheme would have been found out.

8            Brown also asserts, I guess, an affirmative

9    defense to a Martin Act claim relying under Business

10   Corporation Law 715(h) that he relied on the statement of

11   Fischman and his other co-conspirators.  This is a

12   defense, it is not appropriate for a motion to dismiss.

13           First, it is not a defense that is listed or

14   contemplated under the CPLR as an affirmative defense such

15   as a statute of limitations.  It is a factual

16   determination.

17           Further, the Business Law does not exculpate

18   defendants from participation in fraud, especially

19   years-long fraud.

20           Additionally, the 715(h) is a potential defense

21   for an officer.  At no point have the People alleged in

22   their complaint that Brown was an officer.  In fact, we

23   allege the opposite.  We allege that he used various

24   titles to create the appearance that he was the financial

25   expert, and therefore investors should be able to have

mlp

Proceedings

1    comfort in providing their investments.  And the fact that

2    he is not an officer is -- it has also been conceded by

3    Mr. Brown.

4           Regardless, if Brown would like to use that as a

5    defense, the appropriate time to attempt to do that is

6    after the fact finding has occurred.

7           And as Your Honor had pointed out, part of that

8    fact finding will include, and I just wanted to quote from

9    the statute itself, "whether an officer shall perform his

10   duties as an officer in good faith and with the degree of

11   care which an ordinary person in a like position would use

12   under similar circumstances."  And that would also be with

13   the understanding that in relying on good faith, in so

14   relying he shall be acting in good faith and with such

15   degree of care, but he shall not be considered to be

16   acting in good faith if he has knowledge concerning the

17   matter in question that would cause such reliance to be

18   unwarranted.

19          We have alleged, as I said, and I don't want to

20   belabor the point.  At least since 2012 Brown had notice.

21   At the time of fact finding that's when the issue of

22   whether reliance was reasonable or in good faith can

23   happen.  Now at the motion to dismiss stage, we are not

24   there.  As the Court pointed out, that is the meat of

25   discovery.

mlp

Proceedings

1          Now turning to my second point.  The complaint

2     is pled with particularity.  As the Court noted, the

3     purpose of any pleading requirements is to make sure that

4     the defendants are on notice of what the allegations are.

5     The complaint contains allegations which defendant,

6     including what Brown said, the date he said it, how it was

7     said, and to whom.  And includes what was said in quotes.

8     And again, each of those statements are material and false

9     and they have been pled accordingly.

10          Now, Your Honor, I don't want to belabor the

11     point, the First Department, this is my last point, the

12     First Department has decisively held that the six-year

13     statute of limitations is retroactive.  I do have copies

14     of recent cases, the *People v Allen* and *People v Cohen*, if

15     the Court would like; and I have copies for counsel.

16          Would the Court like those?

17          THE COURT:  I don't need it.  Thank you.

18          MS. MCDONOUGH:  Okay.  Your Honor, at this point

19     I have concluded my prepared remarks and I am happy to

20     answer any questions the Court has.

21          THE COURT:  Briefly, Counsel, and then we will

22     break for lunch.

23          MR. DOLLAR:  Yes, Your Honor.  If I may just

24     raise a few points in rebuttal.  First, regarding the duty

25     of reasonable investigation, the A.G.'s office represented

mlp

Proceedings

1    to the New York Court of Appeals in 2012 that this was the

2    standard in a Martin Act case.  Page 106 of their brief in

3    Greenberg.  The Martin Act imposes a duty of reasonable

4    investigation.  In a prior proceeding in this case Justice

5    Sherwood concluded that the Martin Act imposes a duty of

6    reasonable investigation.  That is the legal standard

7    here.

8            In terms of BCL 715(h), we did not interpose

9    this as an affirmative defense, we brought it in to

10   illustrate the fact that what they have alleged, the facts

11   that they have alleged as a matter of law do not

12   demonstrate that Mr. Brown failed to undertake a

13   reasonable --

14           THE COURT:  How can it be as a matter of law if

15   they haven't affirmatively pleaded?  If something is an

16   affirmative defense that means you have the burden to show

17   it.

18           MR. DOLLAR:  It is --

19           THE COURT:  You have the burden to show it.

20           MR. DOLLAR:  It is not an affirmative defense,

21   that's exactly my point.  It is an element of their Martin

22   Act claim to show a failure to have undertaken a

23   reasonable investigation.  They conceded this before the

24   Court of Appeals in 2012.  It is simply a litigation

25   construction for their original opposition to our first

mlp

Proceedings

1    motion to dismiss that they came up with, that Justice

2    Sherwood rejected.

3              THE COURT:  Where in the Martin Act, what

4    language in the Martin Act says that they have this

5    requirement?

6              MR. DOLLAR:  It is *Federated Radio* interpreting

7    it.  And it is the People adopting that interpretation

8    before the Court of Appeals.  They have said in -- they

9    represented to the highest Court in this state, the Martin

10   Act imposes a duty of reasonable investigation, quoting

11   *Federated Radio*.

12             THE COURT:  Under certain circumstances, sure.

13   Under certain circumstances sure.  I mean, they laid out

14   that in the factual circumstances *Federated* was different

15   from the factual circumstances here.

16             MR. DOLLAR:  They have conceded and Justice

17   Sherwood has held --

18             THE COURT:  I got that counsel.  Rebuttal is

19   adding something new.

20             MR. DOLLAR:  Finally, I would ask that Your

21   Honor please read the allegations against Mr. Brown

22   carefully and take particular note of what is a direct

23   quote and what is not direct quote, because my adversary

24   misstated the complaint a number of times.

25             First of all, she disregarded paragraph 19 of

mlp

Proceedings

1    the complaint, which alleges Defendant Stephen Brown was,

2    at relevant times, the most senior financial executive at

3    Cardis and was variously described as its Chief Financial

4    Officer, Vice President of Finance and/or Senior Financial

5    Executive.  And then with regard to --

6            THE COURT:  Counsel, I ask you this question.

7    Can you, in good faith, tell me, as an attorney, licensed

8    to practice in law, that your client has told -- well, we

9    won't talk about what he has told you, but that you have a

10   basis for saying that your client -- that the books and

11   records of one of these Cardis entities shows your client

12   to be a listed officer of that company.

13           MR. DOLLAR:  Of Cardis U.S.A. but not the entity

14   that issues shares.  And I think this is important and it

15   is important that they -- that the People were told to

16   correct this deficiency in the complaint, stop saying

17   Cardis.  It matters which Cardis was which.

18           THE COURT:  Counsel, it may or may not matter

19   which is which.  There are various organizations,

20   prominent organizations, that have a multitude of small,

21   separate, legally separate corporations, who all act

22   together in concert and who have been accused of jointly

23   committing fraud.

24           We will break for lunch here.

25           (Whereupon, a luncheon recess was taken at this

mlp

Proceedings

1          time.)

2                          *                *                *

3                  A F T E R N O O N   S E S S I O N

4                          *                *                *

5          COURT OFFICER:  All rise.  Part 43 is back in

6     session, the Honorable Robert Reed presiding.

7          Come to order.  Be seated.

8          THE COURT:  Before we go on to the next motion,

9     I just want to make sure I have this down on the record.

10         Chambers was notified by e-mail on August 3,

11    2023, that the defendant, Choshen Israel LLC, filed a

12    notice of bankruptcy in the U.S. Bankruptcy Court on

13    August 2, 2023 at 10:00 p.m.  The case number N23-35636.

14         It is well settled when an entity files for

15    Chapter 11 bankruptcy any litigation is stayed with

16    respect to that entity.  That's the 11 U.S. Code section

17    362(a).

18         Choshen is named as a defendant in an action

19    pending before this Court in the matter that we are here

20    on today, *People of the State of New York by Letitia*

21    *James, Attorney General of the State of New York v Aaron*

22    *Fischman, et. al.* index number of 452353 of 2018.  Oral

23    arguments on this matter had long been scheduled for

24    August 3, 2023.  Although Choshen did not file any motions

25    to be heard on the docket today, the case nonetheless is

mlp

Proceedings

1    stayed with respect to that entity pursuant to U.S. Code

2    Section 362(a).

3            However, there are four motions to dismiss

4    scheduled to be heard today before this Court.  Those

5    motions are advanced by defendants Brown, Hoffman, Zerp,

6    Katz and Rosenblatt.  Just to be clear, the Court is not

7    entertaining any application to stay this action as to any

8    of the moving defendants.  It is well settled that the

9    automatic stay provisions of the Federal Bankruptcy Laws

10   do not extend to non bankrupt co-defendants.  See *Maynard*

11   *v George A. Fuller Company* 236 A.D.2d, 300.  See also

12   *Goldman v Moskowitz* 192 -- excuse me 194 A.D.2d, 385.  And

13   *Centrust Services v Guterman* 160 A.D.2d, 416.  Also see 11

14   USC Section 362(a)(1).  While under certain circumstances

15   an automatic stay may be extended for non debtors, see for

16   example *Teachers Insurance and Annuity Association of*

17   *America v Butler* 803 F.2d, 61.  *Thomson and Kernaghan and*

18   *Company v Global Intellicom Inc.*, 2000 Westlaw 640653 and

19   11 USC Section 105(a).

20           The record here is devoid of any evidence that

21   such circumstances are present.  For example, in *Teachers*

22   *Insurance* the Court offered a non-exhaustive list of

23   factors indicating where a discretionary extension of a

24   stay may be appropriate.  Those factors include judicial

25   economy, interest of justice, good faith filing and formal

mlp

Proceedings

1    petition asking for an extension of stay.  And whether the

2    extension of a stay to co-defendants would contribute to

3    the debtor's effort to achieve rehabilitation.

4           None of those circumstances are seen present

5    here.  Further delays would in effect -- would in fact

6    result in judicial inefficiency.

7           Second, the interest of justice is not furthered

8    by entry of any stays.  That stay would only further delay

9    a ruling on the merits of this 2018 case.

10          Third, co-defendants have not formally moved to

11   extend the stay.

12          And finally co-defendants have not indicated a

13   stay would contribute to the debtor's efforts to achieve

14   rehabilitation.

15          Therefore, the action at this point is going to

16   proceed against Choshen's co-defendants, see *United*

17   *Airlines Inc v Ogden New York Services*, *Inc*. 305 AD2d,

18   239.

19          Let's hear the next motion up.

20          MR. DOLLAR:  Are we finished, Your Honor, motion

21   11?

22          THE COURT:  I expect to rule today.

23          MR. BIENENFELD:  Your Honor, my name is Saul

24   Bienenfeld and I have the pleasure of representing Mr.

25   Hoffman, Mr. Rosenblatt and Zerp.  I will be very brief.

mlp

Proceedings

1          First, of course I incorporate all of the

2     arguments Mr. Dollar presented on behalf Mr. Brown.  I

3     believe it is relevant to all of the co-defendants here.

4          I am really at a loss Judge because everyone is

5     talking about an amended complaint.  And I don't have an

6     amended complaint.  I was never served with an amended

7     complaint.  I don't see one on ECF.  So I don't know what

8     anyone is talking about in terms of amended complaint.

9     There is an exhibit that was a proposed amended complaint.

10    But it is an exhibit.  It is unsigned.  And it doesn't --

11    it doesn't follow the format of what this Court wants.

12         THE COURT:  What are you moving to dismiss

13    against?  You filed a motion to dismiss.

14         MR. BIENENFELD:  I renounced it also, Judge.

15         THE COURT:  What is everyone moving to dismiss

16    against?  What are they moving to dismiss?  I don't know.

17         MR. BIENENFELD:  I don't know either.  There is

18    no amended complaint that has been served upon me.

19         THE COURT:  Why isn't the motion moot?  If I

20    deny the motion as moot, if there was no amended complaint

21    then there is nothing for me to do here.  I have been

22    called by four sets of defendants to move to dismiss an

23    amended complaint.  The plaintiffs didn't ask me here.  I

24    am here because four separate sets of defendants said they

25    wanted to move to dismiss an amended complaint.

mlp

Proceedings

1          MR. BIENENFELD:  I guess they are trying to move

2    the proposed amended complaint.  If they want to file it,

3    then you would dismiss it retroactive.  I guess that's

4    what people are looking for, because there is nothing

5    filed that says amended complaint.

6          THE COURT:  Counsel, I ask you to listen to

7    yourself for a moment.  You are standing up at oral

8    argument saying that you have filed with the Court a

9    motion -- you, as an officer of the court, have filed with

10   this Court a motion to dismiss an amended complaint that

11   doesn't exist.

12         MR. BIENENFELD:  Yes.  I could argue in the

13   alternative.  I am allowed to do that as a defendant.  And

14   in the alternative there is no amended complaint.  If you

15   think there is one, then I can argue why it should be

16   dismissed.  But I think there is nothing.

17         THE COURT:  Counsel, you brought the motion.

18   That part is the problem.  You brought a motion.  We could

19   be moving ahead just dealing with discovery.  But I am

20   here because you, among four other counsel, brought a

21   motion seeking judicial action to dismiss an amended

22   complaint.  If there is no amended complaint, Counsel, if

23   there is no amended complaint, then you have filed a

24   frivolous motion and you ought to be sanctioned.

25         Because I don't -- they didn't bring this.  You

mlp

Proceedings

1   brought it.  You said in good faith that there was an

2   amended complaint that needed to be dismissed.  That's why

3   I am here.

4          MR. BIENENFELD:  Your Honor, I think the proof

5   that the People have not met their burden in this proposed

6   amended complaint is the fact that no criminal charges

7   were brought against any of the clients here except for

8   Fischman.  It is same office that brought the criminal

9   charges against Fischman.  If you look at the Martin Act,

10  you will see that there is the same level of culpability

11  civilly as well as criminally.  And since they didn't

12  bring any criminal charges against Hoffman, Rosenblatt,

13  Katz, Zerp, Brown, then they obviously didn't think there

14  is enough elements to bring it criminally.  And there are

15  not enough elements to bring it civilly either.

16          Thank you, Judge.

17          THE COURT:  All right.  Counsel?

18          MS. MCDONOUGH:  Thank you, Your Honor.

19          The complaint is pled with materiality and

20  falsity, which are required for Martin Act claims at

21  63(12).  I am not going to repeat the same arguments,

22  unless Your Honor has any questions.

23          As I did earlier with Defendant Brown, the

24  complaint is pled particularly with respect to Defendant

25  Hoffman.  That includes dates, statements, particularly

mlp

Proceedings

1    there is an allegation that on August 29 to 30, 2016 he

2    communicated with investors saying:  100 percent you

3    should invest more in Cardis because of the pending deals

4    with the Long Island Parking Meter Company and Cumberland

5    Farms.  As I stated before, those were material statements

6    that were false based on the circumstances -- the existing

7    circumstances at the time.

8         With respect to counsel's last argument about

9    not filing criminal proceedings, none of that was briefed,

10   so I am not -- I can brief the Court or we can brief the

11   Court later if the Court would like a response to that.

12   But just generally, there are different standards in civil

13   and in criminal practice, including but not limited to the

14   need to plead intent beyond a reasonable doubt that do not

15   exist in the civil Martin Act or a 63(12) claim.

16        THE COURT:  What's your take on where we are

17   just as a matter of substance?  Motion sequence nine is a

18   motion for leave to amend.  It was granted?  It was

19   granted?

20        MS. MCDONOUGH:  Yes, Your Honor.

21        THE COURT:  So there has been an amended

22   complaint?

23        MS. MCDONOUGH:  Yes, absolutely, Your Honor.

24        THE COURT:  Anything else?

25        MR. BIENENFELD:  The only amended complaint on

mlp

Proceedings

1    ECF is an unsigned exhibit.  That's all I want to say.

2              THE COURT:  Motion sequence 13.

3              MS. KATZ:  Good afternoon, Your Honor.

4         I am Lawrence Katz, the defendant.  I am

5    represented by Barry Feerst in the other Katz entities.

6              THE COURT:  What is that?

7              MS. KATZ:  The other Katz entities, sued as Katz

8    PLLC and Katz P.C.

9              THE COURT:  They are represented by whom?

10             MS. KATZ:  They are represented by Barry Feerst.

11   Mr. Feerst has a chronic condition that did not permit him

12   to physically be here today, so I have elected to argue

13   the motion on my own.

14             THE COURT:  You can argue the motion for

15   yourself, sir.  I am not taking argument on the Katz

16   entities other than yourself.

17             MS. KATZ:  Judge, there isn't much difference,

18   and I am an attorney duly admitted, so I believe I can

19   represent both of those entities as well.

20             THE COURT:  All right.  Go ahead.

21        Be reminded that everything you say here, I am

22   looking at some of the allegations against you, and I just

23   want to, you know, you need to be advised and reminded

24   that this is a record.  And whatever is on the record may

25   be, to the extent it relates to any actions by you as an

mlp

Proceedings

1    attorney that relate to conduct that could be problematic

2    before a disciplinary committee, it is all being taken

3    down, certified by a court reporter.  So just take care.

4              MS. KATZ:  I appreciate that, Judge.  Thank you.

5              Your Honor, I point the Court to the allegations

6    contained in the amended complaint, paragraph 164.  The

7    allegations here are that defendants essentially took

8    money that belonged to the Cardis entity.  But if you look

9    carefully at the allegations, they indicate transfers of

10   money made from one IOLA account to another.  And until

11   the end of the allegation, you don't see any transfer

12   being made to a Katz entity.

13             But, even within the allegation itself, it is

14   stated, without specificity.  For starters, it is not even

15   stated that the original monies, so for example in

16   paragraph 164 they say:  "Defendant Katz transferred

17   $40,000 from the Katz IOLA account contained at Bank of

18   America into a JP Morgan Chase account in the name of Law

19   Offices of Lawrence Katz, IOLA trust account.  It doesn't

20   truly state where the $40,000 came from.  And by the time

21   you get to the end, there is no specific indication, since

22   it says over the month Defendant Katz spent or withdrew

23   $2,624.19 from the 0306 account, all which appear to be

24   for personal expenses.  But it doesn't tell us what was in

25   the account before monies were deposited into that

mlp

Proceedings

1    account.  So those monies that they finally get to the

2    end, and it is $2,600, or roughly $2,600, we don't even

3    know if that $2,600 was originally some money that was

4    somehow related to Cardis or belonged to Cardis.  And they

5    failed to do it in each one of these allegations.

6         And even more than that, it is impossible for

7    the Defendants Katz to even know what the claim is.

8    Because while four examples come to something like

9    $20,000, it is impossible to know, in light of the

10   allegations, that supposedly $72 million was taken.

11   Exactly what are the specific claims that the Katz

12   defendants, if you will, took?  Because essentially the

13   allegations against Katz are one of conversion.

14        And so in truth, they should be specifying both

15   the source of funds, and not in a conclusory fashion.  I

16   paid attention to the argument with Defendant Brown.  But

17   it is not a specific allegation to say the money belonged

18   to Cardis.  It is a specific allegation to say the money

19   came from, by way of example, Robert Schwartz for an

20   investment in Cardis.  That would be specific.  It is a

21   conclusion to say that the money belonged to Cardis.  It

22   is not the same thing.  And they should be doing that for

23   each and every one of the claims that they are making

24   against the Katz Defendants.

25        The defendant is entitled in this type of case

mlp

Proceedings

1      to specific allegations.  And as much as Judge Sherwood

2      had pointed out, I don't know if he pointed out

3      specifically this case, but he has pointed out in other

4      cases, when one is dealing with a Martin Act case, the AG

5      has already conducted discovery.  The AG has these bank

6      records.  So why aren't they telling us what happened with

7      the account?  They know it.  They can do it specifically.

8      There is no reason for the Court to be concerned that

9      plaintiffs are not getting a chance for discovery.  The

10     plaintiffs here have failed purposefully to specify what

11     has happened.  And instead, they are much happier making

12     general allegations, which I also pointed out in the

13     papers, which seemingly claim that the Katz Defendants

14     took two and a half million dollars.

15          But that doesn't seem to be what they are saying

16     now, and I believe motion to dismiss is appropriate.  This

17     is the second complaint that we are dealing with.  And the

18     first complaint they were told be specific.  Over here,

19     against the Katz Defendants, they purposely left out any

20     other allegations in regard to money that was supposedly

21     taken by the Katz Defendants.  They are not even bothering

22     to give us that.  And the ones that they do give it to us,

23     they are purposely being evasive.  Where are the -- where

24     is the missing information?  What is it that they are not

25     telling us?

mlp

Proceedings

1          So again, I would move to dismiss based on the

2     fact that these allegations are not adequate for this type

3     of complaint.

4          And Judge, I would also on the statute of

5     limitations, we pointed out that, again, because of the

6     nature of the allegations against the Katz Defendants,

7     there is a three-year statute of limitation.  And while

8     the AG has pointed out that there is an amendment to the

9     statute, there is some case law favorable to the position

10    of the AG, the amended deals only with those instances

11    where one is bringing a statutory case, and so the SOL was

12    ruled to be three years.  And now they have -- the State

13    Legislature has, I guess the AG would certainly use the

14    word, "corrected" it to reflect that it is six years.  But

15    the statute does not change that which existed before

16    where, in fact, there was a common law type of action that

17    related to the statute.  And the proof of that is that the

18    amend says six years.  And it makes no exception for

19    fraud.  Martin Act deals with fraud-like circumstances.

20    One would have expected that if they were changing it,

21    they would have maintained at least the fraud statute

22    starting from the date when it is that it is discovered

23    and put in.  Again, the differences with fraud that it is

24    six years or two years from the date when the fraud was

25    discovered, and the statute only says six years.

mlp

Proceedings

1          So either the AG is going to take the position

2     that fraud -- common law fraud statute does not apply to

3     the Martin Act, which I doubt that they are taking that

4     position.  So they must be taking the position that, just

5     as we do, that for the purposes of those cases where there

6     was a statute, a common law that applied, that is the

7     case, despite the amendment of the statute.

8          I have nothing further, Judge.  If you have any

9     questions I am happy to answer.

10          THE COURT:  Go ahead, Counsel.

11          MS. MCDONOUGH:  Thank you, Your Honor.

12          Defendant Katz, like Defendant Brown, provided

13     investors with a level of comfort.  Their investment money

14     was directed into the Katz IOLA accounts.  That is the

15     money that we alleged in the complaint moved to Fischman,

16     $3 million, moved to Fischman's family, his wife, his

17     daughter, et cetera.

18          And in paragraph 164 we also allege that that

19     money was moved to Katz for personal -- personal

20     expenditures that include groceries and shopping items.

21          Your Honor, the complaint, again, is pled for

22     material -- excuse me, for the Martin Act where those

23     investors' funds that were deposited into the IOLA account

24     were -- I am quoting from GBL 352-c(2) -- were obtained or

25     subject to the Martin Act because they were obtained by

mlp

Proceedings

1      means of false pretense, representation and promise.  That

2      is a violation of the Martin Act.  And we have pled that,

3      as I already stated.

4            It is pled with particularity.  The transfers,

5      the amounts, the transfer dates, the amounts of those

6      transfers, to which account all of those details are pled

7      in the complaint.

8            And Your Honor, the statute of limitations issue

9      has been decided by the First Department.  And the Martin

10     Act in 63(12) have a six-year statute of limitations and

11     it is retroactive.

12           Your Honor, do you have any questions with

13     respect to this defendant?

14           THE COURT:  No.  Thank you.

15           Anything, Counsel?

16           MS. KATZ:  Your Honor, I would just point out

17     that the comment by the AG that people were given a level

18     of comfort is also simply pled in generalities.  It is not

19     based on anything.  It is a theory that they have.  But,

20     this is about a factual case.

21           THE COURT:  The theory that they have is that

22     the money was -- the theory they have and the allegation

23     that they make is that monies were put into an attorney's

24     IOLA trust account.  And an attorney's IOLA trust account

25     would only be used for the purposes of those clients.  It

mlp

Proceedings

1    is not to be used for another purpose.  It is not to be

2    sent to a third party who is not one of those clients.

3    And it is not to be used for personal expenditures.  Those

4    are the allegations they are making.  So, that's -- that's

5    what they say.

6              MS. KATZ:  But Judge, what Your Honor --

7              THE COURT:  And that --

8              MS. KATZ:  Yes?

9              THE COURT:  And the theory -- the allegations

10   that they make is that those things took place.  And the

11   theory is that an attorney's trust account is one that is

12   required by law, and that what is understood by the

13   placement of funds into an attorney's trust account is

14   that those funds simply are not going to be used for any

15   purpose other than the client's benefit.  And if they are,

16   then there is a misuse.  And there is a representation

17   that is made simply by setting up that bank account, a

18   trust account, and in viewing it with that sense of

19   integrity.  That's the argument.

20             MS. KATZ:  As I said, the way the Court has

21   phrased it, the AG should have made allegations regarding

22   every one of these transfers.  And if that's what they are

23   doing, it should be in the complaint.  And if they are

24   seeking funds just for these four transfers, then I

25   understand why I see these four.  But as I said, they are

mlp

Decision

1   also not pled properly, because you don't even know what

2   monies ended up in the accounts.

3          So again, I understand that there is a theory.

4   But there is nothing here factually that shows what

5   happened with any of these investors other than to say

6   that money was deposited in an IOLA account.  And it seems

7   to me that, again, there are ways to show what happened.

8   So, for example, if we had someone buying a home and they

9   had a check and it was made out for a certain purpose, we

10  would know.  But it is not here.  And just to assume and

11  go forward, I don't understand why it is that they can't

12  plead this the way they are supposed to plead it.  As

13  Judge Sherwood said, these complaints have to be pled

14  specifically.

15         Thank you, Judge.

16         THE COURT:  All right.  Who is next?  I have

17  motion sequence 13.

18         MR. BIENENFELD:  I think it would be 15, but I

19  have made that argument.

20         THE COURT:  You have made the argument here.

21         Nothing else?

22         MS. MCDONOUGH:  I don't have anything with

23  respect to -- with respect to Defendant Rosenblatt to add,

24  Your Honor.

25         THE COURT:  All right.  I have heard from

mlp

Decision

1    counsel for the parties on a variety of motions today.

2    Some, I guess one case, we are essentially taking the

3    matter without additional argument because of the --

4    without additional argument by identified counsel.  But,

5    with Mr. Katz's representations that the arguments that he

6    made serve as well for those co-defendants whose counsel

7    is not here.

8          The Court will now rule.

9          The Cardis enterprise is a Long Island based

10   startup that raised tens of millions of dollars claiming

11   they have developed revolutionary technology to lower the

12   cost of credit card transactions.  But according to

13   plaintiff, the Attorney General, Cardis was essentially a

14   Ponzi scheme.  The Attorney General says no technology was

15   ever developed; Cardis had no contracts or contacts that

16   it represented to have to its investors.  And its promises

17   that an IPO was on the horizon were allegedly just another

18   strategy to induce investors to continue pouring money

19   into an enterprise that defendants knew was going nowhere.

20         In addition, the AG alleges that defendants used

21   investors' money to distribute millions of dollars to

22   Cardis' officers, owners, lawyers, family members and

23   preferred charities, and that such payments were not

24   authorized by any agreement.

25         In the amended complaint the Plaintiff, Attorney

mlp

Decision

1    General, asserts eight causes of action, including for

2    scheme or artifice to defraud pursuant to GBL 352-a and

3    352-c; the first and second cause of action, repeated and

4    persistent fraud and illegality as violations of the

5    Executive Law, section 63(12), or the so-called Martin Act

6    violations.  See the third and fourth causes of action.

7    Actual fraud which is alleged in the fifth and seventh

8    causes of action and equitable fraud in the sixth and

9    eighth causes of action.

10        Today this Court will address four separate

11   motions to dismiss plaintiff's amended complaint.  The

12   motion sequence 11 is advanced by Defendant Brown, who it

13   is alleged was Cardis' Senior Financial Executive and Vice

14   President of Finance.

15        Motion sequence 12 is advanced by two

16   defendants, Hoffman, an agent of Cardis BV, authorized by

17   that company to offer and sell its securities to the

18   public; and Zerp, LLC, which is a LLC formed by Defendant

19   Hoffman which received payments on Hoffman's behalf.

20        And motion sequence 13 is advanced by Defendant

21   Lawrence Katz, Cardis' attorney, who maintained interest

22   on lawyer account, IOLA bank accounts, for the benefit of

23   Defendants Cardis.

24        Motion sequence 15 has been advanced by

25   Defendant Rosenblatt, who is a director of Cardis and a

mlp

Decision

1    director of Choshen, an entity which held and distributed

2    most of the investors' money.

3         The Court will consider each of these motions

4    separately.  Since each of the four motions have some

5    overlapping arguments, more specifically since each of the

6    four defendants argued that the statutory period has run

7    out as against each one of them, the Court will first

8    consider this argument.

9         The analysis and the conclusion of the statutory

10   period has not run out applied universally to each of the

11   four defendants, in this case four sets of defendants.

12   The defendants herein assert that all claims are subject

13   to a three-year statute of limitations and are thus time

14   barred.  This argument is rejected by the Court.

15        First, with respect to each of the defendants,

16   the amended complaint plainly alleges conduct within three

17   years of the filing of the original complaint in December

18   of 2018.  With respect to each one of them, it alleges

19   conduct as recently as the spring of 2016.  Therefore,

20   even if the three-year statute of limitations were to

21   apply, the claims would be timely.

22        The amended complaint, however, also alleges

23   some wrongdoing that dates back as far as 2011, for

24   example, but earlier conduct is also actionable under the

25   continuing wrong or continuing violation theory, because

mlp

Decision

1    it was part of a single allegedly fraudulent scheme to

2    defraud Cardis investors.

3              Where there is a series of continuing wrongs,

4    the continuing wrong doctrine tolls the limitation period

5    until the date of the commission of the last wrongful act.

6    See *Palmeri v Willkie Farr and Gallagher LLP*, 69 NY Supp.

7    3d, 267 at 271.  The doctrine is also known -- the

8    doctrine also known as the continuing violation doctrine,

9    applies to a variety of types of cases, including breach

10   of contract, breach of fiduciary duty, and statutory

11   violations.  See *People v Trump* 88 NY Supp. 3d, 830 at

12   837.  It has been found to be applicable to fraud claims

13   under GBL Section 349 Donnelly Act antitrust claims and

14   violations of non-profit statutes.  See *Shelton v Elite*

15   *Modeling Agency* or *Elite Model Management Inc*. 812 NY

16   Supp.2d, 745 at 757-758.  Here, the amended complaint

17   alleges a single fraudulent scheme and a series of

18   continuing fraudulent acts in support of that scheme from

19   2011 to 2018.  Because the complaint alleges a series of

20   continuing wrongs the statute of limitations was tolled

21   until the last wrongful act alleged in 2018.  See *Trump* at

22   88 NY Supp.3d at 837-838, where the Court found that

23   continuous and pervasive acts represented continuing

24   wrong.  For this reason the amended complaint is timely.

25              Now the Court will address the remaining

mlp

Decision

1    arguments as advanced by each separate defendant.

2         The motion sequence number 11 Defendant Brown

3    moves to dismiss the amended complaint arguing that it is

4    insufficiently particular.  It fails to make allegations

5    of materiality, violates the statute of limitations and

6    that Brown's actions cannot fall under the Martin Acts

7    purview because he relied on other executives in

8    compliance with the Business Corporations Law.  In motion

9    sequence 12, Hoffman and Zerp join in Brown's arguments

10   without delineating how their case differs.  Accordingly,

11   the Court shall address motion sequence 11's arguments and

12   rule on both motion sequence 11 and motion sequence 12.

13        Brown first argues that the complaint fails to

14   allege facts sufficient to show Brown's violation of the

15   Martin Act.  The Martin Act empowers the Attorney General

16   to investigate and enjoin fraudulent practices in the

17   marketing of stocks, bonds and other securities within or

18   from New York.  The Martin Act does not require scienter,

19   intent to defraud or justifiable reliance.  See *People v*

20   *Greenberg* 946 NY Supp.2d 1 at page eight.  Instead, the

21   Martin Act imposes a duty of reasonable investigation, per

22   *People v Federated Radio Corp*.  244 NY 33 at 41, 1926

23   case.

24        While the complaint alleges that Brown drafted

25   and sent out investor letters, the complaint does not

mlp

Decision

1    allege Brown's knowledge of any falsity.  Indeed, Brown

2    relied upon information obtained from other corporate

3    officers from Cardis as permitted under BCL Section

4    715(h).  BCL 715(h) indicates that in performing its

5    duties an officer shall be entitled to rely on

6    information, opinions, reports, or statements, including

7    financial statements and other financial data, in each

8    case prepared or presented by one or more officers or

9    employees of the corporation whom the officer believes to

10   be reliable and competent in the matters presented.  Or,

11   counsel, public accountants or other persons as to matters

12   which the officer believes to be within such person's

13   professional or expert competence, so long as in so

14   relying, he shall be acting in good faith and with such

15   degree of care.  But he should not be considered to be

16   acting in good faith if he has knowledge concerning the

17   matter in question that would cause such reliance to be

18   unwarranted.

19        In contrast, the individual accused of Martin

20   Act violations in *Federated Radio* who relied upon unnamed

21   third-party sources, Brown relied upon statements of

22   corporate officers.  Accordingly, Brown argues that he met

23   the reasonable investigation standard where information

24   was presented to him by corporate fiduciaries with

25   personal knowledge of the transactions in question.

mlp

Decision

1    Plaintiff argues that the Appellate Division previously

2    rejected the argument that Business Corporation Law

3    Section 715(h) permits a defendant to escape liability

4    under the Act because the allegedly false information came

5    from a person on whom he justifiably relied.

6        The Court indicated that such arguments cannot

7    meet the standard for dismissal pursuant to CPLR

8    3211(a)(7).  And accordingly, the law of the case bars

9    such arguments.

10       Additionally, the BCL requires a fact intensive

11   inquiry.  The plaintiff is permitted to rely on officers

12   and employees believed to be reliable and competent,

13   provided that the officer is acting in good faith and with

14   such degree of care.

15       The amended complaint challenges the reliability

16   and competence of parties' executives, and Brown's faith

17   in relying upon their statements, given Cardis' myriad

18   abuses of the corporate forum.  Brown's failure to

19   investigate and his reckless or intentional dissemination

20   of misinformation.

21       Defendant challenges plaintiff's invocation of

22   the law of the case, as Brown was a non-party at the time

23   of Hoffman's cross motions at issue, and this could not

24   constitute the same party raising the same proof in

25   successive motions.  Nevertheless, their reliability in

mlp

Decision

1    good faith elements of the BCL are fact intensive

2    questions, not ripe for dismissal on a motion to dismiss.

3         Plaintiff contests defendant's characterization

4    of *Federated Radio*.  Per plaintiff, the Appellate Court

5    rejected arguments by stockholders that intentional

6    misstatements were required to sustain Martin Act

7    allegations, finding instead that material

8    misrepresentations were enough.  The Appellate Court

9    further explained that promotors or disseminators of

10   information have a duty of reasonable investigation and

11   are responsible for any materially false statements  that

12   they failed to uncover and proceed to disseminate.

13        Notably, *Federated Radio* on the plaintiff's

14   interpretation, stands for the proposition that lack of

15   scienter will not relieve liability in Martin Act claims.

16   It does not mean that reasonable investigation excuses or

17   preempts any liability for the dissemination of false

18   information.

19        Next plaintiff argues that the facts do not

20   indicate that Brown conducted a reasonable investigation.

21   The amended complaint alleges that Cardis was a tightly

22   controlled organization, led by a small group of

23   individuals, including Brown, who was personally involved

24   in repeated misrepresentations over a sustained period of

25   time and doubled down on denials of any wrongdoing.  The

mlp

Decision

1    amended complaint alleges that Brown never obtained any

2    materials that were corroborated as representations and

3    that he failed to conduct a reasonable investigation into

4    the statements he relayed.

5         Such fact intensive inquiry is not appropriate

6    on a motion to dismiss, and accordingly, I will not

7    address these arguments at this stage.  That's for a later

8    date.

9         Brown argues that the motion should be dismissed

10   because the alleged false representations were not

11   material.  Brown points to a recent decision by Justice

12   Ostrager, of this Commercial Division, finding that

13   materiality in an investor fraud context requires

14   examining whether the alleged false representation was one

15   on which a reasonable investor would make investment

16   decisions.  See *People v Exxon Mobile Corporation*, 65 Misc

17   3d, 1233(A).  Also 2019 Westlaw 6795771, 2019; and the NY

18   Slip Op 51990(U).

19        Brown submits that the reasonable investor is

20   not one who would make investment decisions based on

21   tentative, speculative or otherwise forward-looking

22   statements under the, quote, "bespeaks caution" doctrine.

23   See *People v Merkin*  2010 NY Misc. Lexis 523 at *13-14.

24        Brown argues that the complaint references that

25   Brown communicated Cardis' future-looking expectations

mlp

Decision

1    about entering into agreements with RocNation increasing

2    opportunities and potential buyouts on mergers.  Under

3    this view, Brown merely provided lay opinions about the

4    merits of lawsuits.  Moreover, Brown submits that the

5    complaint fails to indicate how the statements affected

6    investment decisions, as they were made to preexisting

7    investors.

8         Plaintiff by contrast, points to the complaint's

9    detailed description of Brown's involvement in the

10   preparation and dissemination of fraudulent financial

11   projections.  Estimating over $1 billion in revenue by

12   2023.  Moreover, plaintiff argues that whether information

13   proffered to investors is mere opinion or puffery is a

14   fact-intensive inquiry.  See *People v Bank of New York*

15   *Mellon Corp*. 977 NY Supp.2d, 668.

16        As such, this Court declines to dismiss the

17   complaint on this basis.

18        Brown next argues that the complaint fails to

19   allege facts sufficient to show that he violated Executive

20   Law Section 63(12).  Executive Law Section 63(12) permits

21   the Attorney General to bring an action whenever any

22   person shall engage in repeated fraudulent or illegal

23   acts, or otherwise demonstrates persistent fraud or

24   illegality in the carrying on, conducting or transaction

25   of business.  Executive Law Section 63(12) utilizes the

mlp

Decision

1    same definition of fraud as the Martin Act, wherein

2    scienter and justifiable reliance are not required.  Brown

3    alleges that the complaint is insufficiently

4    particularized with respect to Executive Law 63(12),

5    allegations, as with the Martin Act allegations, in that

6    they fail to allege with particularity what repeated

7    fraudulent or illegal acts Brown committed.  The complaint

8    refers to communications with investors, but alleges no

9    facts suggesting that the acts were repeated or

10   persistent.  Instead, it concludingly alleges a pattern.

11   Defendant is incorrect on this point.

12       The amended complaint details Brown's

13   involvement in ongoing and persistent fraud.  Brown argues

14   that the complaint fails to plead elements necessary to

15   sustain allegations of actual fraud.  Prima facie elements

16   of a claim for actual fraud under New York Law are:

17       One, a material misrepresentation of fact.  Two,

18   knowledge of the defendant of its falsity.  Three, intent

19   to induce reliance.  Four, justifiable reliance.  And

20   five, damages.  See *People v Credit Suisse Securities*

21   *(USA) LLC* at 31 NY3d, 622.

22       Brown argues that none of the allegations create

23   an inference that Brown knew of the falsity of his

24   representations or the materiality of his representations.

25   Instead, the complaint alleges that many investors relying

mlp

Decision

1    upon Brown's good representation in the community made

2    additional investments in Cardis based on his investor

3    letters updates.  Again, defendant is incorrect.

4         The complaint, to this Court's reading, details

5    Brown's involvement in ongoing and persistent fraud.

6         Brown further argues that the complaint fails to

7    plead the elements necessary to establish a claim for

8    equitable fraud.  Equitable fraud refers to the material

9    misrepresentations, though innocent or unintentional, on

10   which an action might be maintained in equity to rescind a

11   consummated transaction.  See *People v Credit Suisse (USA)*

12   *LLC*  31 NY3d at 622 at 639.

13        Brown argues that the complaint merely recites

14   the elements of equitable fraud without particular --

15   without further particularity indicating which

16   misstatements or omissions were fraudulent, which specific

17   defendant made the actionable representations.  Why the

18   investors reliance was justifiable or the resulting

19   transactions were inspired by the misrepresentations.

20        Defendant here is incorrect again.  The

21   complaint, to this Court's reading, details Brown's

22   involvement in ongoing and persistent fraud.  Again,

23   assuming the truth of the allegations asserted in the

24   complaint.  Accordingly, motion sequences 11 and 12 are

25   denied.

mlp

Decision

1     With respect to motion sequence 13.  This Court

2  has already rejected Katz's statute of limitations

3  argument.  Defendant Katz additionally alleges that the

4  amended complaint fails to allege the Katz defendants'

5  fraud was sufficiently detailed and therefore each of the

6  four types of fraud causes of action as asserted against

7  Katz must be dismissed.

8     This argument is rejected.  First, the amended

9  complaint explains how the Katz defendants, through their

10  control of Cardis bank accounts, assisted defendant

11  Fischman in siphoning over $3 million in investor payments

12  through fraudulent payments to Choshen.  The fact Fischman

13  controlled Cardis did not afford him the right to disperse

14  funds for his own personal use.  See *Gallagher v United*

15  *States* at 2018 Westlaw 314-8355 Eastern District Court,

16  2018, rejecting the argument in the securities fraud case

17  that a manager of a company had the right to take the

18  money for his own use.

19     Nor can it be argued on the facts alleged in the

20  amended complained that these payments were legitimate.

21  The amended complaint alleges over $3 million in payments

22  to Choshen for a non-revenue generating company.  No

23  written agreement to justify the payments; payments in

24  wholly irregular amounts and timing; and that the payments

25  were used for personal expenses.  Under these

mlp

Decision

1    circumstances the payments could be at trial determined to

2    be fraudulent.  See *Vance v DePalo* at 2016 Westlaw 1324183

3    at *3 *4, where the Supreme Court in a civil forfeiture

4    action found substantial probability of success on the

5    merits of a claim of fraud based on diversion of investor

6    assets through phony payments for consulting services.

7        Second, the amended complaint details the Katz

8    defendants' assistance in fraudulent payments to Fischman

9    family members and charities, none of whom had any right

10   to the money, according to the amended complaint.  And

11   specifically alleges the amounts misappropriated to each.

12   See *Nnebe v United States* at 2005 Westlaw 427534 at *3 is

13   vacated and remanded at 534 F.3d, 87.  A securities fraud

14   conviction where money was misappropriated and not used

15   primarily for legitimate business purposes as promised.

16       See *People v Sala* 258 AD2d 182 at 94, confirmed

17   at 95 NY2d, 254.  The Court found that the failure to

18   disclose commissions and fees violated the Martin Act.

19   See *Knox LLC v Lakian* 2018 Westlaw 4278399 at *2 and 10,

20   where the New York Supreme Court found that diversion of

21   investor monies constituted fraud.  The motion notably

22   makes no claim these payments were appropriate.

23       Third, the amended complaint describes how the

24   Katz defendants themselves allegedly misappropriated

25   Cardis' money to fund defendant Katz's own personal

mlp

Decision

1    expenses and provides for, in detail, tracing the accounts

2    of defendants' alleged theft of Cardis funds, see *United*

3    *States v Kuperman*, 288 F. App'x 740.  That case describing

4    a federal securities fraud conviction based on diversion

5    of investor funds, quote, "for personal use and benefit."

6    For example, the amended complaint alleges that in

7    September of 2014 Defendant Katz transferred $40,000 from

8    the Katz IOLA account maintained at Bank of America to a

9    Chase -- into a JP Morgan Chase account in the name of the

10   Law Offices of Lawrence Katz IOLA Trust Account.  With the

11   particular account number identified.

12           Or in October of 2014 the Defendant Katz

13   received $100,000 from a Cardis investor and deposited it

14   into the JP Morgan Chase account specifically identified

15   by number in the names of Law Offices of Lawrence Katz

16   IOLA Trust Account.  And over the month he withdrew

17   $5,840.81 from the account all of which appear, according

18   to the amended complaint, to be for personal expenses.

19   These include Target, Costco and a local supermarket.  Or

20   for example, there is an allegation that in May of 2016

21   defendants' Katz transferred $50,000 from the Katz IOLA

22   account maintained at Bank of America to a Signature Bank

23   account bearing the name Law Offices of Lawrence Katz

24   Esquire PLLC IOLA account.  Over that month alone

25   defendant Katz appears to have spent over $5,000 on

mlp

Decision

personal expenses, including Urban Outfitters, Costco and

Victoria Secret.  These allegations are more than adequate

to give the Katz defendants notice of the claims against

them.  And given that the amended complaint must merely

allege facts sufficient to permit a reasonable inference

of the alleged conduct, see *Pludeman v Northern Leasing*

*Systems Inc*.  At 10 NY3d, 486 at 492.  See also *House of*

*Spices (India) v SMJ Services Inc*. at 103 AD3d, 848 at

851.

Finally, the Katz defendants refer to their IOLA

accounts as escrow accounts and argue that there is

nothing to indicate that they did anything but follow the

lawful directions of their clients.

As an initial matter, there is no escrow

agreement alleged in the amended complaint.  And the Katz

defendants offer no evidence to support the claim that

they were escrow agreements, that the accounts were escrow

agreements or that they followed the lawful directions of

their clients.  There is nothing to support the defense,

this defense.  It is, in any event, a factual defense that

is inappropriate on a motion to dismiss.  See *511 West*

*232nd Street Owner's Corp. v Jennifer Realty Co*. at 98

NY2d, 144 at 151-152.  The Court recognized that on a

motion to dismiss the Court must accept as true the facts

alleged in the complaint.  Katz defendants' motion is

mlp

Decision

1       therefore dismissed.

2               Motion sequence 15 is advanced by Defendant

3       Rosenblatt.  According to the amended complaint, the

4       Defendant Rosenblatt was a significant contributor to the

5       Cardis fraud.  Allegedly Rosenblatt distributed false

6       investor update letters and helped perpetrate the scheme

7       through direct interactions with investors via e-mail and

8       telephone.

9               Rosenblatt advances three arguments as to why

10      the complaint face as against him.  First, he argues that

11      the complaint was not timely filed.  This argument was

12      already addressed and rejected.

13              Next, Rosenblatt argues the motions fail to

14      state a -- excuse me.  Next, Rosenblatt argues that the

15      amended complaint fails to state a causal action and that

16      it is insufficiently particular.

17              Finally, he argues that the amended complaint

18      fails to join a necessary party.

19              Each of these arguments is rejected.  The

20      amended complaint adequately alleges each claim against

21      Rosenblatt.  Rosenblatt is named in four counts of the

22      amended complaint:  Counts one, three, five, and six.

23      Each of the counts sufficiently states a cause of action.

24              Count one alleges that Rosenblatt violated the

25      Martin Act.  The Martin Act authorizes the Attorney

mlp

Decision

General to prosecute fraudulent practices in connection
with securities and only requires fraudulent conduct be
material.  See *People v Greenberg* 946 NY Supp.2d at 1 at
8.  Here the amended complaint plainly alleged -- alleges
a Martin Act claim and alleges that Rosenblatt was a key
participant in material and fraudulent conduct.  See the
amended complaint paragraphs 143 through 151.

Count three alleges that Rosenblatt violated
Executive Law Section 63(12).  Executive Law Section
63(12) authorizes suit for repeated fraudulent or illegal
acts or persistent fraud in the illegality in the carrying
on, conducting or transaction of business.  Plainly the
amended complaint alleges repeated and persistent Martin
Act violations, acts of fraud and equitable fraud through
Rosenblatt's participation in the long running Cardis
fraud.  See amended complaint at paragraphs two, 33, and
143 through 151.

Count five alleges that Rosenblatt committed
actual fraud.  The actual fraud claim requires, as the
Court has stated, four material misrepresentations,
knowledge or recklessness and intent to induce reliance,
justifiable reliance and damages.  And see *People v Credit
Suisse Securities (USA) LLC*, 31 NY3d, 622 at 638.  See
concurrents there.  See *McMorrow v Dime Savings Bank of
Williamsburgh* at 852 NY Supp.2d 345 at 346 and 347.  The

mlp

Decision

amended complaint alleges each of these elements

describing Rosenblatt's intentional, knowing and reckless

participation in a long-running fraud and investors

reasonable reliance on Cardis' misrepresentations.  See

the amended complaint paragraphs 31, 130, 140, 143,

through 51 and 159.

Count six alleges that Rosenblatt committed

equitable fraud.  Equitable fraud claims only require a

material misstatement and reliance.  See *Credit Suisse*

case, the concurrents at 31 NY3d at 639.  The amended

complaint alleges each of these elements for the same

reason it meets the test for actual fraud.

Relevant to each of these causes of action is

the following conduct which is described in detail in the

amended complaint.  The fraud claims advanced as against

Rosenblatt are rooted in allegations that Rosenblatt had

direct communications with investors and that such

communications contain either material misrepresentations

or material omissions.  Specifically, the amended

complaint alleges, for example, that in December 2014

Rosenblatt sent a group of investors a letter which he was

falsely claiming.  For example, that a RocNation/Cardis

store was expected to go live in January/February of 2015.

And a final contract was close to finalized.  In

actuality, the RocNation/Cardis store was not expected to

mlp

Decision

1    go live in January of -- in January or February of 2015 as

2    claimed.  And the final contract was not close to

3    finalized.  That Cardis was finalizing an agreement with

4    ByStorm Entertainment to be its exclusive payment system,

5    it would go live in late January, 2015.  In actuality, the

6    amended complaint alleges Cardis was not finalizing any

7    agreement with ByStorm to be its exclusive payment system.

8    The companies only had one introductory meeting the

9    amended complaint alleges.

10       Further, another example, Cardis says, quote,

11   "is in advance negotiations to become the payment

12   processor for Primary Way."  In actuality, according to

13   the amended complaint, Primary Way never entered into any

14   negotiations with Cardis.

15       Additionally, the alleged -- the amended

16   complaint alleges that Rosenblatt had direct false

17   communications with investors in the following

18   circumstances:  On October 18 of 2013 Defendant Rosenblatt

19   wrote the following to an investor.  Quote.  "We at Cardis

20   now believe that the company will be doing an IPO within

21   the next 12 months.  We are signing some more major

22   contracts in the next coming weeks."  These statements,

23   the amended complaint alleges, were false because no IPO

24   was on the horizon and Cardis did not expect or did not

25   certainly reasonably expect to sign major contracts in the

mlp

Decision

coming weeks.

Another example, March 18 of 2015, Defendant Rosenblatt falsely represented that Cardis was, quote, "finishing up the RocNation contract and should be signed by next week."

Another example, on or about September 24 of 2015 Defendant Brown and Defendant Rosenblatt e-mailed a disgruntled investor that a lawsuit claiming fraud was, quote, "frivolous," while claiming that Cardis' relationship with RocNation was, quote, "developing," and ongoing.

Based on these allegations, it is clear that the amended complaint details Rosenblatt's role in the Cardis fraud in a way that satisfies CPLR 3016(b), which of course is the particularity requirement.

Moreover, the amended complaint details specific investors who detrimentally relied on the false statements in the investor update letters disseminated by Rosenblatt. See the amended complaint at paragraph 140.

It also describes other investors who detrimentally relied on Cardis' false representations and omissions. See the amended complaint at paragraphs 130, 154 and 155.

Rosenblatt could be found to be liable for this conduct as a participant in the Cardis scheme. See *CPC*

mlp

Decision

1    *International Inc. v McKesson Corporation* 70 NY2d, 268 at

2    286.  The Court of Appeals there recognizing that the

3    defendant was liable for conduct of co-conspirators that

4    were in furtherance of a conspiracy.

5           Finally, Rosenblatt argues that the amended

6    complaint -- amended complaint's references to certain

7    third parties make them necessary parties to this action.

8    This argument is rejected.  First, Rosenblatt ignores the

9    fact that the Attorney General, chief law enforcement of

10   the State of New York, brought this action pursuant to two

11   laws, Martin Act and the Executive Law that accord only

12   the Attorney General standard to prosecute this civil

13   action.

14          Second, even if this were a private action,

15   Rosenblatt fails to establish that dismissal would be an

16   appropriate remedy under the CPLR.  Under CPLR 1001(a),

17   necessary parties to an action or proceeding fall into two

18   distinct categories.  Persons who ought to be parties if

19   complete relief is to be accorded between persons who are

20   parties to the action.  Or, who might be inequitably

21   affected by judgment in the action.  See *27th Street Block*

22   *Association v Dormitory Authority of State of New York* at

23   752 NY Supp.2d, 277 at 281.  And even where a party is

24   deemed necessary, dismissal is a last resort.

25          Here, Rosenblatt offers nothing to establish

mlp

Decision

1    that there are any third parties necessary to obtain

2    complete relief or that there are third parties who would

3    be inequitably impacted by judgment in this action.  Nor

4    does Rosenblatt undertake the analysis required to justify

5    the last resort of dismissal.  There is no basis to

6    dismiss the amended complaint based on Rosenblatt's

7    arguments.

8         The Court is satisfied that the amended

9    complaint that is presented offers particularized

10   statements that puts each defendant individually on notice

11   of what it is he or it is accused of having done that

12   could violate the Martin Act or the Executive Law or

13   result in a verdict of fraud, actual or equitable.  The

14   level of detail that is offered in the amended complaint,

15   the Court believes, is not confusing in any manner.  And

16   to the extent that their -- that each defendant would like

17   to further inquire as to the specific allegations with

18   respect to them, or raise defenses based on areas of

19   perceived weakness in the amended complaints, they are

20   free to do so in the course of discovery.  And they are

21   free, of course, to move to have this matter dismissed at

22   the end of discovery by way of motion for summary

23   judgment.  But the Court is satisfied that the complaint

24   here -- amended complaint here is sufficiently detailed

25   and specific as to the allegations and claims against each

mlp

Decision

1    of the defendants as to allow it to proceed and have the

2    matter proceed through discovery.

3           Accordingly, it is hereby ordered that each of

4    the motions presented to the Court today, motion sequence

5    11, motion sequence 12, motion sequence 13, and motion

6    sequence 15 are all thus hereby ordered denied.

7           I direct that the movants order a copy of the

8    transcript of today's proceedings and present it to the

9    clerk of Part 43 for so ordering.  Any party may, for

10   their own purposes, order a copy of the transcript and

11   present it as they choose.  But the direction here is that

12   the moving parties jointly, and the Court will issue a

13   short form gray sheet order simply denying each of the

14   motions today.  The transcript will serve as the basis for

15   the Court's decision in case anyone seeks further remedies

16   from that.

17          I'll direct that the -- any answers be filed

18   within 30 days of -- well, within 20 days of the date of

19   the notice of entry of this Court's order.

20          The record is closed.

21                    *         *         *

22   CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT OF THE ORIGINAL

23   STENOGRAPHIC MINUTES IN THIS CASE.

24

25                    MICHELE PANTELOUKAS
                      SENIOR COURT REPORTER
                      mlp