# EXHIBIT 14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------x
SHALOM S. MAIDENBAUM,

                                Petitioner,

      -against-                              Index No. 160618 /22

                                                  AFFIDAVIT IN
                                                  OPPOSITION TO
ULTIMAX DIGITAL, INC., fka ULTIMAS, INC.      PETITION
and CARDIS ENTERPRISES INTERNATIONAL
(USA), INC.,

                                Respondents.
-------------------------------------------------------- x

STATE OF NEW YORK    )
                                )ss.:
COUNTY OF NASSAU    )

       PAUL GOODMAN, being duly sworn, deposes and says:

       1.     I am the President of Ultimax Digital, Inc., fka Ultimas, Inc. ("Ultimax"), and have been at all times relevant herein, including April 2018, such that I am fully familiar with all of the facts and circumstances as hereinafter set forth.

       2.     I am making this affidavit in opposition to the Petition of Shalom S. Maidenbaum ("Petitioner" or "Maidenbaum"), which essentially seeks summary judgment based upon a contract between respondent Cardis Enterprises International (USA), Inc. ("Cardis") and Ultimax, which was breached by Cardis and thereafter terminated or abandoned, such that Cardis is not entitled to any relief thereby rendering this proceeding baseless.

       3. Apparently, the Petitioner believes he can step into the shoes of Cardis to collect royalty payments under an agreement which was terminated almost five years ago due to

Cardis' breach of contract and outright fraud. Upon information and belief, Cardis is defunct, has no assets, is not engaged in business, and has no employees.

4. Based upon my own personal knowledge, the Petitioner's counsel, Eric Berry, Esq. does not have any personal knowledge of the underlying facts of the contractual relationship between Cardis and Ultimax, and has no knowledge regarding Cardis' software, referred to herein as "the Payment Aggregation System". Thus, counsel is not in a position to offer any factual testimony regarding the relationship between Cardis and Ultimax or any of the alleged facts and circumstances in the Petition. While Petitioner could have offered an affidavit of someone with personal knowledge of the facts, he did not, and the fact that no such affidavit is presented is both telling and fatal to Petitioner's claim.

5. Ultimax received no value whatsoever from the License Agreement, and in fact, Ultimax has a valid cause of action against Cardis for breach of contract and the return of the $234,000 in royalty advances paid to Cardis in 2018. The only reason such an action has not been filed is that Ultimax is aware that Cardis is insolvent and defunct.

6. Some background will be illustrative. When Ultimax was originally formed in 2018 as Ultimas, it intended on developing a credit card and cryptocurrency payment aggregation platform designed to reduce the costs associated with online merchants accepting payments via credit card and cryptocurrency such as Bitcoin. In order to create this payment technology, Ultimax entered into the License Agreement with Cardis to license the credit card payment aggregation system that Cardis had purportedly already developed, but never commercially released.

7. It is important to note that Cardis had never actually launched the Payment Aggregation System as a commercial product. Nevertheless, Cardis's Chief Executive Officer, Jonathan Nirenberg, made representations to Ultimax that the software for the Payment Aggregation System existed, and that it was a commercially viable product that could be easily adapted for Ultimax's intended purposes to economically process payments.

8. It is important to note that at the time of the execution of the License Agreement, Cardis was essentially defunct and had no operations, and had just one employee, its CEO Jonathan Nirenberg. Cardis was nothing more than a shell company that purportedly had rights to the Payment Aggregation System, little to no cash, and apparently, significant unpayable liabilities.

9. The License Agreement was in the form of a "source code" license pursuant to which Ultimax would receive the actual computer code written by Cardis' programmers for the Payment Aggregation System, also know as the "source code." The License Agreement granted Ultimax the right to adapt that source code to change the form of payment accepted from credit cards to crypto currencies.

10. In exchange for the license to the source code of the Payment Aggregation System, Ultimax agreed to pay Cardis a royalty on Ultimax's profits generated via its use of the modified Payment Aggregation System.

11. In April 2018, Ultimax and Cardis entered into the source code License Agreement. Although required by Section 1.5 of the License Agreement, the source code for the Payment Aggregation System was not provided by Ultimax. Accordingly, Cardis was in breach of the Agreement from its inception.

12. In August, 2018, Cardis's CEO contacted Ultimax in a panic to claim that Cardis' rights to the Payment Aggregation System were about to be foreclosed upon pursuant to a security interest Cardis had granted on the source code to a lender known as Freshtree Technology, Ltd. ("Freshtree") as security for the repayment of a promissory note dated January 25, 2018. While Ultimax was aware of the security interest, at the time of the execution of the License Agreement, Cardis' was not yet in default at the time that the License Agreement was executed.

13. However, in August 2018 Cardis informed Ultimax that on April 30, 2018, just days after the execution of the License Agreement, it had defaulted on the promissory note. Cardis kept this vital piece of information hidden from Ultimax for over three months and only revealed it to Ultimax on the very eve of the lender foreclosing on the software that had been licensed by Cardis to Ultimax. During those three months, Ultimax spent substantial sums of money planning its business.

14. If Cardis was to lose all rights to the Payment Aggregation System, which would make the License Agreement useless to Ultimax, and although it was not contractually obligated to do so, on August 14, 2018, Ultimax paid off Cardis' obligation to Freshtree. Upon information and belief, it is now believed that the principal of Freshtree is none other than Maidenbaum.

15. As of that date, August 14, 2018, Cardis had not yet delivered the source code for the Payment Aggregation System, and in fact it was never delivered.

16. Simply stated, despite Ultimax paying to Cardis a total of $234,000 in advances against a future royalty on revenue generated by the Payment Aggregation System, Cardis never delivered the source code for Payment Aggregation System to

Ultimax. Thus, Ultimax was never able to build its payment processing system, as a result of the breach of contract by Cardis.

17. Even more simply stated, Ultimax received zero value from the License Agreement because the licensed source code was never delivered.

18. Section 1.5 is not the only provision in the License Agreement which Cardis breached. In Section 3.1, Cardis made a series of representations and warranties to Ultimax. The pertinent parts of Section 3.1 are shown below:

> 3.1 Representations and Warranties
>
> Licensor represents and warrants that:
>
> (a) Licensor is the sole owner of all right, title and interest in the Software and all applicable rights to patents, copyrights, trademarks and trade secrets inherent or embodied therein or appurtenant thereto and that it has the right to grant the License, free and clear of any liens, charges and encumbrances or any claims of third parties (including, without limitation the owner(s) of the Software) whatsoever except that (i) Licensor has granted a security interest in the Software to Freshtree Technology, Ltd. by agreement dated January 25, 2018 to secure repayment of a promissory note of even date therewith in the amount of $135,000 with a maturity date of April 30, 2018; (ii) on January 21, 2016 a judgment by Confession was entered against Licensor in the amount of $2,576,442.78 in favor of Shalom S. Maidenbaum in the Supreme Court of the State of New York, County of Nassau and an execution dated January 22, 2018 was served on the Licensor's New York office seeking the sale of US Patent Numbers 6467685, 6076075, 6065675 and 6119946 to satisfy the judgment; and (iii) on March 13, 2018 a judgment was entered against Licensor in favor of Simon Stern, Fredrick Stern, Moshe Stern, Daniel Stern and Raphael Stern in the amount of $75,000 and the Licensor has entered into a forbearance agreement to pay off the judgment;
>
> (b) Licensee's use of the Software in accordance with this Agreement does not infringe any right, including without limitation, any intellectual property rights of any third party (including, without limitation the owner(s) of the Software);
>
> ...
>
> (e) Licensor is duly authorized by all requisite action to execute, deliver and perform this Agreement;

(f) The entry into this Agreement by Licensor will not violate or breach any written agreement between Licensor and any third party.

19. Cardis breached the following representations it made in Section 3.1:

(a) Cardis breached Section 3.1 (a) by stating that it was: "the sole owner of all right, title and interest in the Software and all applicable rights to patents, copyrights, trademarks and trade secrets inherent or embodied therein or appurtenant thereto and that it has the right to grant the License." Upon information and belief, Cardis did not have the rights it purported to exclusively license to Ultimax.

(b) Cardis breached Section 3.1 (a) by stating that it was: "Licensee's use of the Software in accordance with this Agreement does not infringe any right, including without limitation, any intellectual property rights of any third party (including, without limitation the owner(s) of the Software)" since Ultimax's use of the source code, had it ever been provided, would you have, in fact, infringed the intellectual property rights of third parties.

(c) Cardis breached Section 3.1 (a) by stating that it was: "Licensor is duly authorized by all requisite action to execute, deliver and perform this Agreement" when in fact, upon information belief, it was not.

(d) Cardis breached Section 3.1 (a) by stating that: "the entry into this Agreement by Licensor will not violate or breach any written agreement between Licensor and any third party," when in fact, upon information belief, it was not.

20. Ultimax's right to terminate the License Agreement for Cardis' breaches, none of which could be cured, is clear not just under Section 1.5 but also under Section 3.1(b) which states:

3.8 Termination

(b)) Termination by Licensee. In addition to its rights as set forth elsewhere in this Agreement, Licensee shall have the right to terminate this Agreement upon any material breach by Licensor of any provisions of this Agreement if not cured within sixty (60) days after written notice from Licensee.

21. To summarize the facts:

a. Ultimax was never provided the licensed source code.

b. Ultimax never utilized the source code to build a payment system. That would have been an impossibility since Ultimax was never provided the source code for the Payment Aggregation System.

c. Ultimax never generated any revenue from the use of the source code for the Payment Aggregation System. That would have been an impossibility since Ultimax was never provided the source code for the Payment Aggregation System.

d. Ultimax paid a total of $234,000 in advance royalty payments to Cardis and received no value under the License Agreement whatsoever.

e. Cardis concealed for over three months that the Payment Aggregation System was being foreclosed upon by a lender.

22. Due to Cardis' breach, Ultimax was not able to continue to pursue the development of a crypto currency payment aggregation system and had to completely change its business plan to becoming a video game publisher and developer, at great expense to Ultimax and a loss of over $500,000.

23. As a result of all of the foregoing facts and circumstances, Nierenberg and Cardis on the one hand, and myself and Ultimax on the other hand, both considered the License Agreement to have been abandoned and without any legal effect, as Cardis was not in a position to perform under the Agreement, and Ultimax was not going to pay as Cardis was in breach. Therefore, Cardis never billed Ultimax, never made any demands

for payment, and never communicated at all with Ultimax. Instead, both parties ignored the Agreement as though it had never come into being in the first place. This is why there are no records produced by Petitioner to establish any communications, business activity, or contacts of any kind, between the two parties. That is because the contract was abandoned by our mutual conduct, even assuming that it was not otherwise terminated (and it was).

24. In summary, there is no basis for the claims of Maidenbaum, such that Ultimax has interposed a Verified Answer, a copy of which is annexed hereto as Exhibit "A". I am advised by counsel that the Petition is utterly without merit and should be dismissed.

WHEREFORE, it is respectfully requested that the Petition be dismissed in its entirety, with prejudice, together with such other and further relief as to the Court may seem just and proper.

_____
PAUL GOODMAN

Sworn to before me this
a day of February 2023

_____
Notary Public

Robert P. Johnson
Notary Public, State of New York
No. 02JO4735214
Qualified in Nassau County
Commission Expires 05 / 31 / 20___