UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                    Case No. 23-35660-CGM
                                          **Chapter 11**
**Choshen Israel LLC,**                   **OBJECTION TO**
                                          **MOTION TO DISMISS**
            Debtor(s).
---------------------------------------------------------X

## DEBTOR'S OBJECTION TO MAIDENBAUM'S MOTION PURSUANT TO 11 U.S.C 1112(B) TO DISMISS THIS CASE WITH PREJUDICE

**NOW HERE COMES** Choshen Israel, LLC, Chapter 11 Debtor, ("Choshen") through its counsel of record, Linda Tirelli of Tirelli Law Group, LLC and hereby files its Objection to Maidenbaum's Motion Pursuant to U.S.C. 1112(b) to Dismiss this case with Prejudice, and states as follows:

1. On August 2, 2023, Choshen filed its voluntary petition so it may liquidate under Chapter 11 of the Bankruptcy code. Chosen is not operating and only intends to marshal its assets, liquidate them, and pay creditors a pro-rata dividend.

2. On September 8, 2023, Shalom S. Maidenbaum ("Maidenbaum") filed his motion to dismiss this case with prejudice, claiming bad faith. Maidenbaum filed a nearly identical motion to dismiss in a companion case involving Aaron Fischman ("Fischman"), a principal of Choshen. *In re Aaron Fischman*, Case No 23, 35660-CGM (Bankr., S.D.N.Y).

3. Maidenbaum's filings are part of scorched earth litigation strategy akin to the "war of the roses" from Danny Devito fame. Maidenbaum asks this Court to dismiss this bankruptcy, as it did Fischman's bankruptcy, with prejudice, prematurely, in disregard for established law.

4. Choshen has already submitted to a 341 meeting of creditors and an Independent Debtor Interview.

5. In its Affidavit Pursuant to LBR 1007-2, the Debtor stated its intention is to liquidate assets which at the time included shares in Dutch Antilles, Cardis Enterprises International B.V. and Cardis Enterprises International N.V. ("Cardis") were located in the

Netherlands. Debtor has since discovered a number of lithographs and paintings and intends t liquidate these assets as well.

6. Choshen amended its schedules to identify nearly a dozen Jewish themed lithographs dating back to the 17th and 18th centuries.

7. Choshen is in the process of retaining an expert appraiser[1] with specialized knowledge of Jewish themed art. Due to their unique historical and cultural nature, Choshen believes this art may have value to benefit its creditors.

8. Choshen has also identified office furniture which too may have value to benefit its creditors. Moreover, one of Choshen's principals, Aaron Fischman, has offered to satisfy up to 10% of all valid creditor claims.

9. The claims bar date for Choshen's Chapter 11 liquidation passed on October 30, 2023. To date, the IRS has filed a proof of claim for $26,920.00. Mr. Maidenbaum filed a proof of claim seeking $4,808,888.75[2].

10. Prior to filing his claim Mr Maidenbaum filed the instant Motion to Dismiss on September 1, 2023. Mr Maidenbaum is clearly misguided as he leads with the following:

> PRELIMINARY STATEMENT
> 1. This motion demonstrates that the case should be dismissed with prejudice under 11 U.S.C. §1112(b)(1), §1112(b)(4)(A), §1112(b)(4)(M) and the Court's inherent and equitable powers, on the following grounds:
> (a) There is no reasonable possibility that Choshen can successfully reorganize;
> (see ECF Dkt No 16 Maidenbaum Motion at Pg. 2)

---

[1] Undersigned counsel reached out to a number of appraisers with knowledge and experience in Jewish themed art. The efforts were hindered by the many Jewish holidays in September and October but a qualified appraiser has now been located and will be retained for the purpose of appraising the art.
[2] The undersigned counsel is reviewing the supporting documentation filed with Mr Maidenbaum's claim and preparing to file an objection to the claim and litigate the claim, as the debtor is well within its rights to do.

11. Choshen cannot reorganize and thus its stated intention has consistently been to liquidate.

In the movants papers Mr Maidenbaum seeks dismissal under 11 USC §1112(b)(1) §1112(b)(4)(A) and §1112(b)(4)(M) which read as follows:

*(b)(1)Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.*
*(4)For purposes of this subsection, the term "cause" includes—*
    *(A)substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; …*
    *(M)inability to effectuate substantial consummation of a confirmed plan;*

12. The Debtor's intention to liquidate was made clear in its initial affidavit pursuant to LBR 1007-2 (see ECF Dkt No 2). Now that the bar date to file claims has passed, the Debtor can file its objections to the a disputed claim, have assets valued and proceed to present a plan of liquidation.

13. The Movant fails to argue a liquidating Chapter 11 creates any prejudice to any creditor let alone himself.

14. In a Chapter 11 liquidating plan, "the reorganized debtor's sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend. (citations omitted). It has no interest in reentering the marketplace, as in the case of a reorganization plan. Thus the 'specter of endless bankruptcy jurisdiction and a kindred concern about unfairly advantaging reorganized debtors' does not exist in the context of a liquidation plan." *In re Agway Gen. Agency, Inc. v. Burkeholder (In re Agway, Inc.)*, Nos. 02-65872, 02-65877, 04-80269, 2006 Bankr. LEXIS 4552, at *9 (Bankr. N.D.N.Y. Mar. 6, 2006)

15. On September 26, 2023, this Honorable Court voluntarily offered Maidenbaum's counsel a "teachable moment" when ruling against Maidenbaum's motion to dismiss Mr. Fischman's bankruptcy. See Transcript of Proceedings attached as Exhibit A.

16. As in Mr. Fischman's bankruptcy, Maidenbaum had not yet filed a proof of claim at the time of filing the instant motion to dismiss. Mr Maidenbaum also knows that the proof of claim filed in both the instant case and the case of Aaron Fischman can, and certainly will, be disputed.

17. Yet, Maidenbaum persists. Maidenbaum ignores this Court's teachable moment, still insisting this Court should look past the debtor's schedules, make a finding of bad faith, and dismiss this case with prejudice.

18. Maidenbaum should concede this Court rejected the gravamen of its argument for dismissal here, namely that Choshen's Chapter 11 liquidation case should be dismissed for exceeding the eligibility limit imposed under 11 U.S.C. §109(e) for Chapter 13 – which makes no sense.

19. 11 U.S.C. 109(e) provides: "only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated debts of less than $2,750,000 or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated debts that aggregate less than $2,750,000 may be a debtor under chapter 13 of this title …." [11 U.S.C.S. § 109 (LexisNexis, Lexis Advance through Public Law 118-16, approved October 2, 2023)](#)

20. On August 22, 2023, Choshen, in its chapter 11 case, filed its summary of assets and liabilities, listing $2,682,400.00 in liabilities, including secured claims, priority unsecured

claims, and nonpriority unsecured claims. In good faith, Choshen's Statement of Financial Affairs identified the pending litigation involving Maidenbaum and the People of the State of New York.

21. As this Court advised during hearing on Maidenbaum's Motion to Dismiss Mr. Fischman's case with Prejudice, it is premature to dismiss the instant case.

22. In rejecting Maidenbaum's motion to dismiss Mr. Fischman's bankruptcy, the Court noted "There's no reason at this point that the debtor should find bad faith or look past debtor's schedules. Even if the Court did find bad faith and look past the schedules to make the debt limit calculations, it's still not apparent that the debtor is beyond the debt limit. Excuse me. There have only been two proofs of claim filed in this case…. These debts hardly equate to or even approach $2.75 million debt limit." Transcript 9:21-10:23.

23. The Court invited Maidenbaum's counsel to look at the various Court of Appeals decisions on point which instruct a court should look beyond the amounts asserted by the debtor and the schedules only if it determines it was not filed in good faith." Transcript 8:18-9:4.

24. As the Sixth Circuit instructs for over four decades, since 1985, "Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith. *In re Pearson*, 773 F.2d 751, 757 (6th Cir. 1985). *Pearson* based its holding on U.S. Supreme Court's adjudication of diversity jurisdiction based on challenges to the amount in controversy. *Id.* The Sixth Circuit found the approach of good faith at the time of filing made "good sense" and was both "workable and fair." *Id.*

25. In 2001, the Ninth Circuit "implicitly adopted the Sixth Circuit's holding in *Pearson* that the bankruptcy court should normally look to the petition to determine the amount of debt owed, checking only to see that the schedules were made in good faith. *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001).

26. *Scovis* recognized that, "as articulated in *Pearson*, this rule finds its grounding in both the text of § 109(e) and Congressional intent, and is similar in nature to the subject matter jurisdiction context for purposes of determining diversity jurisdiction. *See Pearson*, 773 F.2d at 756-57. We now simply and explicitly state the rule for determining Chapter 13 eligibility under §109(e) to be that eligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith.

27. As the Court explained in the hearing denying Maidenbaum's motion to dismiss Mr. Fischman's bankruptcy transcript 7:9-9:25:

> I'm giving you both a lesson right now. Section 307 of Bankruptcy Code allows a Bankruptcy Court to dismiss a Chapter 13 case for cause and enumerates seven specific occurrences which constitutes sufficient cause. Although 11 U.S.C 3 -- 307(c) does not expressly equate bad faith with cause, the Court can also dismiss the petition if the debtor files his petition in bad faith. And there's case law on that…., I'm doing this as a courtesy.
>
> To determine whether bad faith exist or is present, the Court looks at the totality of circumstances and is only found in egregious cases involving concealment or misrepresented assets or expenditures, lavish lifestyle in intention to avoid singular debts incurred through fraud and other means. Here the creditor cites debtor's filing as cause for dismissal and claims that debtor's personal filings and the filings of the Chapter 11 case were intended only to stay a State Court action against the debtor. You don't give me any reason for that belief. [You fail] to indicate any basis for that belief. Indeed, the debtor seems to be in financial trouble. That's what we do. This is Bankruptcy Court….
>
> Here the Court has made no finding of bad faith on its own efforts. And as mentioned before, the creditor has only shown why the Court should find the debtor is acting in bad faith…. There's no reason at this point that the debtor should find bad faith or look past debtor's schedules. Even if this Court did find bad faith and look past the schedules to make the debt limit calculations, it's still not apparent that the debtor is beyond the debt limit.

28. Maidenbaum's instant motion to dismiss still seeks to put the cart before the horse, despite having the benefit of this Court's lessons on the proper order for the relief Maidenbaum seeks.

29. It is well settled that "there is a presumption of good faith in favor of the petitioning creditor, and thus the alleged debtor has the burden of proving bad faith." *Lubow Mach. Co. v. Bayshore Wire Prods. (In re Bayshore Wire Prods.), 209 F.3d 100, 105-06 (2d Cir. 2000)*. In *Lubow*, the Second Circuit explained:

> Because 'bad faith' is not defined in the bankruptcy code, and because there is no legislative history addressing the intended meaning of this language, courts have used different approaches to determine whether a petition was filed in bad faith [for purposes of § 303(i)(2)]." (citations omitted) Some courts have used an "improper use" test, which "finds bad faith when a petitioning creditor uses involuntary bankruptcy procedures in an attempt to obtain a 'disproportionate advantage' for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum." (citations omitted) Other courts have applied an "improper purpose" test, where bad faith exists if the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor. (citations omitted) A third line of cases employs an objective test for bad faith based on "what a reasonable person would have believed." (citations omitted). Finally, as the Eleventh Circuit has observed, a number of courts have sought to model the bad faith inquiry on the standards set forth in Bankruptcy Rule 9011. (citations omitted). According to the Eleventh Circuit:
>
>> An analysis under Rule 9011 inquires into "a significant objective requirement bearing on the legal justification of a claim or defense: a reasonable inquiry into the facts and the law." In addition to requiring an objective inquiry, Rule 9011 requires a subjective inquiry as well: the bankruptcy proceeding cannot have been interposed for an improper purpose, "such as to harass, to cause delay, or to increase the cost of litigation." General Trading Inc., 119 F.3d at 1502 (citation omitted). *Id.*

30. Respectfully, Maidenbaum fails to meet any test of "bad faith" by its regurgitation of the war of the roses scorched earth narrative. Choshen's schedules are filed in good faith. Assets are identified and being readied for sale for the benefit of all creditors.

31. Mr. Maidenbaum is not the only creditor in this case. As aforesaid, a proof of claims was filed by the IRS for $26,920.00. This Court should reject Maidenbaum's "pass go and send my adversary directly to jail" argument. Regardless of how Maindenbaum's claim pans out

post-litigation, there is another creditor, undisputed, namely the IRS, and it too would like to be paid. Liquidating the corporate assets of the company no longer functioning is an appropriate and responsible measure to take to pay down the legitimate debts of legitimatecreditors.

32. This is especially true as Mr. Fischman is presently litigating his own motion to hold Maidenbaum in contempt for violating the automatic stay by trying to sell property in Israel.

33. For the reasons set forth above, Maidenbaum's Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

This the 16th day of November, 2023.

__/S/ Linda M. Tirelli_____
Linda M. Tirelli, Esq.,
Tirelli Law Group
50 Main Street, Suite 1265
White Plains, N.Y. 10606
Tel:(914) 732-3222 /Fax:(914) 517-2696
LTirelli@TirelliLawGroup.com